## SCHMAUCH et ux, *Respondents,*
### *v.*
## JOHNSTON et al, *Appellants.*

547 P2d 119

*Ralf H. Erlandson,* Milwaukie, argued the cause for appellants. With him on the briefs was Jonathan K. Enz, Milwaukie.

[ 441 ]

*Raymond R. Bagley, Jr.,* of Jack, Goodwin & Urbigkeit, Oregon City, argued the cause and filed a brief for respondents.

BRYSON, J.

**BRYSON, J.**

This is an action to recover damages for breach of contract. The trial court, sitting without a jury, made findings in favor of the plaintiffs and entered judgment accordingly. The defendants appeal.

We view the facts in a light most favorable to the plaintiffs and affirm the judgment of the trial court if it is supported by any substantial evidence, despite contradictory evidence offered by defendants. *Atlas Hotel Supply v. Baney,* 273 Or 731, 543 P2d 289 (1975).

On August 28, 1972, the parties entered into a written contract whereby defendants agreed to build a home for plaintiffs for the sum of $57,344, including the building lot. The contract provided:

"\* \* \* \* \*.

"Said building shall be constructed in a good workmanlike manner with materials specified in said plans and specifications and in complete compliance with all applicable building codes, laws, ordinances, rules and regulations of competent public authority, all at builders expense. No changes in said plans and specifications shall be made without buyer and builder agree[ing] in writing as to the cost and details thereof. Upon completion of construction builder shall remove all rubbish from the premises and leave same broom clean.

"Builder shall remain responsible for faulty materials or workmanship and shall remedy any defects due thereto which shall appear within a period of one year after completion date and pay any damage resulting therefrom.

"\* \* \* \* \*."

Plaintiffs discovered numerous defects and omissions in the construction of the home and within one year commenced this action.

The trial court found that defendants breached the construction contract

"I.

"\* \* \* by failing to provide specified materials, by

[ 443 ]

failing in several respects to construct according to the plans and specifications, and by failing to perform the work in a good and workmanlike manner in numerous respects.

"II.

"The following items were not constructed or installed in a good and workmanlike manner:

"2 showers
"Basement floor and drainage
"Garage floor
"Brick wall veneer
"Floors and walls not plumb
"Roof flashing at dormers
"Toilets
"Fireplace hearth

"The following items were not furnished or installed according to the contract:

"2 pair shutters missing
"Rear downspouts missing
"Patio cover missing
"Siding not up to standard
"Window wells not concrete
"False beams

"III.

"The reasonable cost of repair and replacement of the items set forth in No. II above so as to conform to contract requirements is $6,290.75.

"* * * * *."

Defendants contend that the "Court lacked competent substantial evidence to award plaintiff damages for defendants' alleged failure to install or construct the basement, garage, toilets, brick wall veneer, floors and walls, roof flashing, and fireplace hearth in a good and workmanlike manner." The same contention is made as to other controverted items such as siding, shutters, patio cover, and a missing downspout.

The defendants are in the real estate and land development business and were developing lots for sale in the Charjan district in Clackamas County. They in turn employed a Mr. Bill Giese of Northwest Contractors, Incorporated, to do their building "on spec

or even custom built homes." Giese in turn subcontracted the electrical, cement, roofing, plumbing, and other work on the house. Defendant Johnston testified:

"Q   Now, there was testimony by Mr. Schmauch, as I followed it, that you insisted that Bill Giese build this home?

"A   That's true.

"Q   Why was that?

"A   Mr. Giese was a good contractor. He put up good homes. He was a crook but he was good and the homes that he put up there — we were not diversified and putting them into other contractors. * * *"

The evidence discloses that the home was not completed within the agreed time and Mr. Giese was not on the building project during the latter stages of construction.

There is substantial testimony to support the court's findings that defendants failed to construct according to the plans and specifications and that the construction was not performed in a workmanlike manner. Robert Morrisey, defendants' job supervisor, and Lawrence Furtado, a carpenter, testified that defendants had instructed them to deviate from the building plans and specifications in some instances. Defendant Johnston admitted that he deviated from the building plans in at least one instance. Numerous photographs were received in evidence depicting poor workmanship and missing items contracted for in accordance with the plans and specifications.

■  Defendants' principal contention is that there was no substantial evidence to support the trial court's findings. We have carefully reviewed all of the testimony and exhibits and conclude that plaintiffs offered competent evidence from which the court could have allowed damages for the breach of the contract in the sum of $7,579.75. The plaintiffs alleged damages in the amount of $6,576, and the trial court awarded total damages of $6,290.75. In addition to general findings, the trial court set forth certain items which he

determined were not constructed or installed in a workmanlike manner or were not furnished in accordance with the contract, but no specific amount of damages was detailed for the individual items. We have no way to determine from the court's findings and judgment what amounts the court chose to delete from the plaintiffs' proof and demands. The evidence, though conflicting, is sufficient to support the trial court's findings, which has the effect of a jury's verdict. *Fabre v. Halvorson,* 250 Or 238, 239, 441 P2d 640 (1968); *Mission Ins. Co. v. Enger Ins. Co.,* 266 Or 439, 444, 513 P2d 763 (1973); ORS 17.435.

■ Defendants also contend that the court erred "when it awarded plaintiff[s] damages in connection with the two showers" and argue that plaintiffs presented no expert testimony to establish the cost of repair. However, plaintiff Michael Schmauch testified regarding the defects in the showers, and photographs were received in evidence showing their defective condition. Also, two written bids by companies specializing in this type of work, itemizing the defect in installation and the cost of repair, were received in evidence. These exhibits were received without objection. We find no error in this respect.

■ Lastly, defendants contend that the trial court erred in using the cost of repair as the measure of damages as to some of the alleged defects. This argument was never raised before the trial court and no objection was made to the testimony received. Plaintiffs argue that diminution of value rather than the cost of repair should be the rule for measuring damages. However, the record shows that the defects could be remedied in a feasible manner and that the cost of repair was a prudent rule to apply. *See Turner v. Jackson,* 139 Or 539, 560, 11 P2d 1048 (1932). The rule is stated in McCormick, Damages 648-50, § 168 (Hornbook Series 1935) as follows:

> "In whatever way the issue arises, the generally approved standards for measuring the owner's loss from defects in the work are two: First, in cases where the

defect is one that can be repaired or cured without undue expense, so as to make the building conform to the agreed plan, then the owner recovers such amount as he has reasonably expended, or will reasonably have to spend, to remedy the defect. Second, if, on the other hand, the defect in material or construction is one that cannot be remedied without an expenditure for reconstruction disproportionate to the end to be attained, or without endangering unduly other parts of the building, then the damages will be measured not by the cost of remedying the defect, but by the difference between the value of the building as it is and what it would have been worth if it had been built in conformity with the contract. * * *

"* * * * *.

"* * * Only if the cost is disproportionate does the standard of difference in value become applicable at all. * * *" (Footnotes omitted.)

We also observe that plaintiff Michael Schmauch, as owner, testified without objection that because the defendants did not conform to the contract the value of the home was diminished in the amount of $10,000.

Affirmed.