Argued and submitted September 3, 1980; resubmitted in banc February 12,
reversed and remanded February 18, reconsideration denied April 9,
petition for review allowed May 5, 1981 (291 Or 1)

BEVERIDGE et ux,
*Appellants,*
*v.*
KING,
*Respondent.*

(No. A 7812 20655, CA 16889)

623 P2d 1132

Cary A. Gluesenkamp, Hillsboro, argued the cause and filed the briefs for appellants.

James K. Belknap, Portland, argued the cause and filed the brief for respondent.

BUTTLER, J.

Richardson, J., dissenting.

**BUTTLER, J.**

Plaintiffs appeal from an order granting defendant's motion for summary judgment and dismissing plaintiff's complaint as being barred under the statute of limitations contained in ORS 12.135(1).[1] They also appeal from an order denying their cross-motion for summary judgment in which they contended the action was governed by ORS 12.080(1),[2] and was timely. We reverse.

Plaintiffs entered into an earnest money agreement with defendant, by the terms of which plaintiff agreed to buy and defendant agreed to sell a parcel of real property, together with the new house then under construction on the property. An implied term of the agreement was that the new house would be completed in a workmanlike manner. *Newlee v. Heyting,* 167 Or 288, 117 P2d 829 (1941). The house was completed, the sale was consummated and plaintiffs moved in. Shortly thereafter, it became apparent that the plaintiffs had not received what they bargained for because the house had not been constructed in a workmanlike manner. More than two years after they became aware of the construction defects, but with the six years permitted by ORS 12.080(1), plaintiffs brought this action against defendant for breach of the contract under which they bought the house.

In his motion, defendant contended only that the action was barred by ORS 12.135(1) as construed by this

---

[1] ORS 12.135(1) provides:

"An action to recover damages for injuries to a person or to property arising from another person having performed the construction, alteration or repair of any improvement to real property or the supervision or inspection thereof, or from such other person having furnished the design, planning, surveying, architectural or engineering services for such improvement, shall be commenced within two years from the date of such injury to the person or property; provided that such action shall be commenced within 10 years from substantial completion of such construction, alteration or repair of the improvement to real property."

[2] ORS 12.080 provides:

"(1) An action upon a contract or liability, express or implied, excepting those mentioned in ORS 12.070 and 12.110 and except as otherwise provided in ORS 72.7250;

"* * * * *

"shall be commenced within six years."

court in *Securities-Intermountain v. Sunset Fuel,* 40 Or App 291, 594 P2d 1307, (*see* dissenting opinion), *rev allowed* 287 Or 149 (1979). On that basis, the trial court granted defendant's motion for summary judgment. Subsequently, however, the Supreme Court reversed our decision, *Securities-Intermountain v. Sunset Fuel,* 289 Or 243, 611 P2d 1158 (1980), and it is clear from that opinion that ORS 12.135(1) does not apply to this case. The Supreme Court stated its conclusion on the application of that section as follows:

> "We conclude that the phrase 'injuries to persons or to property' was thought to encompass what is commonly meant by 'personal injuries,' i.e. bodily injuries including their psychic consequences, and physical damage to existing tangible property, but not financial losses such as a reduced value of the completed project due to the unsatisfactory performance of the work or the added cost of satisfactory completion or replacement. Actions to recover such financial losses remain within statutes of limitation other than ORS 12.135. [Footnote omitted.] * * *" 289 Or at 251.

■ In this case, plaintiffs allege that as a result of unsatisfactory construction by defendant, they suffered financial losses incurred from undertaking necessary repairs to correct the defects. There are no claims for any personal injury or injury to tangible property, so ORS 12.135 has no application.

Plaintiffs contend that ORS 12.080(1) is controlling because it applies to "an action upon a contract or liability, express or implied * * *." Defendant now contends for the first time that, even though ORS 12.135(1) is not applicable, this action is barred by ORS 12.110(1), which governs "an action for assault, battery, false imprisonment, for criminal conversation, or for any injury to the person or rights of another, not arising on contract * * *." The classic definition of a tort is "a wrong independent of contract." Black's Law Dictionary, 4th Ed., 1951. It seems clear enough that the two statutes referred to make that classic distinction, and although life has become more sophisticated justifying some inroads on the clear delineation [ORS 12.135(1) and malpractice cases are examples], we see no purpose or justification in muddying the water further.

In contending that ORS 12.110(1) controls, defendant attempts to adapt the analysis used by the court in *Securities* — in determining whether claims based on contracts for the personal services of professionals — to this contract for the sale of real property. The issue here was not addressed by the Supreme Court in *Securities* or in any of its predecessors. We perceive no reason why any decision should have addressed it because it is clear that this action is a straight forward one for breach of contract for the sale of improved real property, and, as such, is governed by ORS 12.080(1). The analysis undertaken by the court in *Securities* simply does not fit this kind of action.

The dissent seems to conclude that the rationale of *Securities* requires that in order to assert a claim for breach of a contract for the sale of improved real property, the underlying contract must specify, and the buyer must allege, *specific* obligations of the seller, rather than rely on the recognized implied obligation that the house under construction will be completed in a workmanlike manner. Apparently, the dissent would require that the earnest money agreement here must specifically provide that upon completion of the house water will not flow continuously under it, it will be level, the roof will not blow off under normal conditions, etc. Such things are not done in the real world, and we do not understand the Supreme Court's opinion in *Securities* to impose such a requirement.

We conclude that ORS 12.080(1) controls this action and, therefore, reverse the judgment of the trial court.

Reversed and remanded.

**RICHARDSON, J.,** dissenting.

The majority opinion states " * * * it is clear that this action is a straight forward one for breach of contract for the sale of improved real property, and, as such, is governed by ORS 12.080(1)." 50 Or App at 589. The relationship of plaintiffs and defendant is not simply one of buyer and seller of a home. The parties in their pleadings do not characterize the relationship in those terms. Plaintiffs alleged in their complaint:

"On or about August 14, 1975, Plaintiffs and Defendant entered into a contract by which Plaintiffs agreed, for a

stipulated sum, to purchase a house that was being constructed by Defendant * * *. Defendant to furnish all labor and materials necessary for completing construction of the house * * *.

"An implied term of said contract was that Defendant would construct the house in a workmanlike manner. Plaintiffs relied on Defendant to construct the house in a workmanlike manner."

In his answer and affirmative defense, defendant alleged:

"On or about August 14, 1975, plaintiffs and defendant entered into a contract for the construction of a house pursuant to plaintiffs' specifications."

Plaintiffs specifically admitted the truth of that allegation in their reply.

In the real world the majority uses for its contract analysis, these plaintiffs, in addition to purchasing a lot, purchased the professional services of defendant to construct a house on that lot to plaintiffs' specifications. Although the relationship, on superficial analysis, has some aspects of a simple garden variety purchase and sale of a home, it is more properly characterized as a contract for services of a professional builder.

Beginning with *Dalton v. Kelsey,* 58 Or 244, 114 P 464 (1911), and ending with *Ashley v. Fletcher,* 275 Or 405, 550 P2d 1385 (1976), the Supreme Court has sought to determine the "real" character of a plaintiff's action for statute of limitations purposes rather than accepting at face value the characterization in the pleadings that it is in contract or tort. The court extensively examined these authorities in *Securities-Intermountain v. Sunset Fuel,* 289 Or 243, 611 P2d 1158 (1980), and concluded that when plaintiffs chose to bring actions for property damage caused by negligence of defendants, whose duty arose from an agreed general undertaking, the plaintiffs who pled the contract as the inducement showing defendants' duty, and could invoke tort law for the applicable standard of care and damages. In doing so, the plaintiffs had to sue within the two-year limitation period for actions "not arising on contract." In contrast, when the contract expressly committed defendant to some particular performance and defendant breached the express commitment, the action

was one in contract and the six-year limitation applied. In summarizing these two positions, the court stated:

"Thus the statutes and the precedents leave us with several variations when an action for damages against one engaged to provide professional or other independent services is commenced after two years and is pleaded as a breach of contract. If the alleged contract merely incorporates by reference or by *implication* a general standard of skill and care to which the defendant would be bound independent of the contract, and the alleged breach would also be a breach of this noncontractual duty, then ORS 12.110 applies. * * * Conversely, the parties may have spelled out the performance expected by the plaintiff and promised by the defendant in terms that commit the defendant to this performance without reference to and irrespective of any general standard. Such a defendant would be liable on the contract whether he was negligent or not, and regardless of facts that might excuse him from tort liability. Or the nature either of the defendant's default or of the plaintiff's loss may be of a kind that would not give rise to liability apart from the terms of their agreement. In such cases, there is no reason why an action upon the contract may not be commenced for the six years allowed by ORS 12.080. * * *" (Emphasis added.) (Footnote omitted.) 289 Or at 259-60.

Contrary to the majority, I believe *Securities-Intermountain* addressed the problem in this case. Examining the real character of this action, plaintiffs have charged defendant with breaching an implied duty to provide the services in a workmanlike manner. I agree with the majority that contracts for the purchase of a house to be constructed by a builder have an implied term that the house will be constructed in a workmanlike manner. *Newlee v. Heyting,* 167 Or 288, 117 P2d 829 (1941); *American Petrofina v. D & L Oil Supply,* 283 Or 183, 583 P2d 521 (1978); *Amer. Recip. Insurers v. Bessonette,* 241 or 500, 405 P2d 529 (1965). But these cases do not solve the riddle whether failure to complete the services in a workmanlike manner is properly redressed in a contract action. As the Supreme Court said in *Securities:* "If the alleged contract merely incorporates by reference or by implication a general standard of skill and care to which the defendant would be bound independent of the contract, and the alleged breach would also be a breach of this noncontractual duty, then ORS 12.110 applies." 289 Or at 259.

In deciding the precise issue before it in *Securities,* the Supreme Court stated:

"\* \* \* For the second asserted breach, the complaint alleges:

" 'In designing the heating system in such an unworkmanlike manner that if completed per design it could not and would not produce sufficient heat throughout the apartment complex to meet the minimum Federal Housing Authority requirements nor any reasonable requirements.'

"By inclusion of the phrase 'unworkmanlike manner,' this allegation appears to invoke a negligence standard or general professional duty of due care and skill rather than a contractual standard. In context it can stand as an alleged breach of contract. Apart from that phrase, the allegation is that Sunset's heating system would not meet requirements which were incorporated by reference in the contract, and by which Sunset had agreed to be bound. This differs from a case in which a warranty of 'workmanlike' performance or due care toward achieving the intended result is pleaded as an implied term of general agreement to undertake professional services. \* \* \*" (Citation omitted.) 289 Or at 263.

Had the contract not contained particular specifications regarding the heating system, the plaintiffs in *Securities* would have been left with an allegation that the defendants failed to design the heating system in a workmanlike manner. It is clear from the Supreme Court's opinion that the action would then have sounded in tort and plaintiffs would have been limited to bringing the action within two years. That is precisely what has occurred in this case. There are no specifications in the contract for construction of the house. Defendant had a general duty of skill and care in constructing the house. This duty arose, not on contract, but derived from the contractual relationship.

The majority does not explain how defendant, faced with an alleged breach of contract, may defend the claim. Can he prove that his performance met a standard of skill and care of similarly situated builders? If, as the majority concludes, plaintiffs contracted to buy an improved lot, what must they prove to recover? They in fact received an improved lot. Can they recover by proving the roof was improperly installed, i.e., negligently installed?

In short, what are the perimeters of the implied duty to construct in a workmanlike manner? I conclude the implied duty to provide professional services with skill and care is enforceable in a tort action using tort standards for determining the quality of the performance.

This action in reality is a tort action and ORS 12.110 describes the applicable limitation period. Plaintiffs' claim is barred because it was not brought within two years of the time the defects in construction were discovered. I would affirm the trial court's order granting the motion for summary judgment, therefore, I respectfully dissent.

Joseph, Chief Judge, and Thornton and Van Hoomissen, Judges, join in this dissent.