585 So.2d 376 (1991)
ELIZABETH N., Appellant,
v.
RIVERSIDE GROUP, INC., a Florida Corporation, Appellee.
No. 90-864.
District Court of Appeal of Florida, First District.
August 15, 1991.
*377 Jay C. Howell of Anderson and Howell, Jacksonville Beach, for appellant.
Terry D. Bork of Boyd and Jenerette, Jacksonville, for appellee.
BARFIELD, Judge.
This appeal requires the determination of which statute of limitations applies to a claim for breach of an implied warranty of habitability of a new residence, where the buyer was raped in the residence. The trial court granted the defendant developer's motion for judgment on the pleadings, which asserted that the action was barred by section 95.11(3)(p), Florida Statutes (1984), because the personal injury occurred more than four years before the suit was brought. We affirm.
Appellant's complaint, filed on October 30, 1989, alleged that she had closed on the sale of a residential unit in the Raintree complex, which included "property, living structure and rights to the common elements of the property," and had moved in "on or about October 30, 1984," and that she was raped in her residence on November 27, 1984. She alleged that the defendant was aware of burglaries and sexual assaults on female residents in September and November 1984, that the defendant "acted as landlord for the residents of the complex" and "exercised control over the complex and the property of the individual residents through its control of the owner's association," and that the implied warranty of habitability upon the sale of the property obligated the defendant "to protect the residents of the complex from reasonably foreseeable criminal activity and to warn them in regard to previous criminal activity."
The trial court found that actions alleging a breach of the implied warranty of habitability are governed by the four-year "catch all" statute of limitations contained in section 95.11(3)(p), citing K/F Development and Investment Corp. v. Williamson Crane & Dozer Corp., 367 So.2d 1078 (Fla.3d DCA), cert. den., Williamson Crane & Dozier Corp. v. K/F Development & Investment Corp., 378 So.2d 350 (Fla. 1979).[1]
Appellant argues that the proper limitations statute to be applied in this case is section 95.11(2)(b), which provides a five-year limitations period for a "legal or equitable action on a contract, obligation or liability founded on a written instrument," and that this specific statutory language precludes the possibility that the appropriate statute of limitations is the generally worded "catch all" four-year statute of limitations. She relies upon Long v. First Federal Savings and Loan Association of Citrus County, 497 So.2d 964 (Fla. 1st DCA 1986), in which this court held that the applicable statute of limitations for breach of an express warranty for sale of a house was five years. She asserts that the primary question is whether there is any difference between the statute of limitations applicable to a cause of action based upon an express warranty in a purchase and sale agreement for a residence and a cause of action based upon an implied warranty of habitability founded on a similar contract. She contends that Florida courts have established that legal obligations implied by law are actually parts of written contracts, relying in part on Heredia v. Safeway Trails, Inc., 369 So.2d 418 (Fla.3d DCA), cert. den., Safeway Trails, Inc. v. Heredia, 378 So.2d 348 (Fla. 1979).[2]
*378 Appellee argues that the trial court properly relied on K/F Development and Investment Corporation in ruling that section 95.11(3)(p) governs actions based upon a breach of the implied warranty of habitability, and argues that cases dealing with products liability implied warranty actions also support the conclusion that this statute should govern implied warranty cases, citing Creviston v. General Motors Corporation, 225 So.2d 331 (Fla. 1969); Putnam v. Roudebush, 352 So.2d 908 (Fla.2d DCA 1977); Smith v. Continental Insurance Company, 326 So.2d 189 (Fla.2d DCA 1976); Lauck v. General Telephone Company, 300 So.2d 759 (Fla.2d DCA 1974); and Barfield v. United States Rubber Company, 234 So.2d 374 (Fla.2d DCA), cert. den., United States Rubber Company v. Barfield, 239 So.2d 828 (Fla. 1970). It distinguishes Long on the ground that it was based upon an express warranty which was clearly contractual in nature, and argues that rulings that legal obligations implied by law are actually parts of written contracts do not lead to the conclusion that an implied warranty action is governed by a contractual statute of limitations, asserting that the fact that the legal obligation is implied by law would indicate that the action is not truly contractual in nature. Appellee also distinguishes Heredia because it dealt with a breach of an implied obligation in a service contract to transport a passenger safely, an entirely different cause of action from the instant claim.
Appellant asserts that Putnam, cited by appellee for the proposition that products liability principles also govern cases dealing with the implied warranty of habitability, made no such sweeping statement, but merely stated: "If we are to extend implied warranties to condominiums, it seems logical to allow the condominium developer/seller the same defenses that we allow the manufacturer/seller in the products liability field." 352 So.2d at 909. She contends that the statute of limitations was not at issue in Putnam, and that Smith, Barfield, and Creviston are product liability cases which, unlike this cause of action, were not characterized by the presence of any contract, obligation, or liability founded on a written instrument. She cites Lochrane Engineering, Inc. v. Willingham Realgrowth Investment Fund, Ltd., 552 So.2d 228 (Fla. 5th DCA 1989), cert. den., Anderson v. Willingham Realgrowth Investment Fund, Ltd., 563 So.2d 631 (Fla. 1990), a case involving inadequate sewage disposal systems, in which the court emphasized the contractual nature of the duties involved in a cause of action for breach of an implied warranty in the sale of a residential unit by a developer/seller, and Navahoe Circle, Inc. v. Development Concepts Corp., 373 So.2d 689, 692 (Fla.2d DCA 1979), involving a class action by condominium owners for negligence for a defective roof dismissed for lack of privity, in which the appellate court stated: "A warranty, whether express or implied, is fundamentally a contract. A contract cause of action requires privity."
Implied warranties were recognized in English courts by the early 19th century.[3] Suits for breach of warranty were first brought in tort as actions on the case for deceit, the breach treated as an offense against society rather than as a matter merely between private litigants. Warranty actions in assumpsit were not established until the close of the 18th century. "Because the law of warranty was merged into the law of contract at the time contractual principles had evolved into a well-developed body of formal rules, the influence of its own historical origin in tort were (sic) never fully assimilated." Sullivan, Innovation in the Law of Warranty, 32 Hastings L.J. 341, 352 (1980).[4]
While express warranties were routinely enforced in the United States, implied warranties were slow to be recognized. With *379 some exceptions, the general rule of law for the greater part of the 19th century was caveat emptor, which presupposes face-to-face dealing, relatively equal commercial experience, and a fair opportunity for the buyer to examine the goods. With mass production, this doctrine gradually receded and the notion of sellers' implied warranties of quality expanded. Id. at 353-58. The attempt to adapt contract and tort doctrine to changing economic conditions ultimately produced the modern law of products liability. Searching for a broadly based legal theory that would allow the imposition of liability on remote sellers outside the confining context of contract law, courts rediscovered warranty's origin in tort. In Jacob E. Decker & Sons Inc. v. Capps, 139 Tex. 609, 164 S.W.2d 828 (1942), a suit for implied warranty for processed meat, the Texas court "recognized a connection between modern economic reality and warranty's ancient foundations in tort." Sullivan, Innovation in the Law of Warranty, 32 Hastings L.J. 341, 364 (1980). The court noted that consumers in the modern marketplace cannot protect themselves, and stated that the warranty involved "is not the more modern contractual warranty but is an obligation imposed by law to protect public health." 164 S.W.2d at 831.
The necessity of revising real property law to accommodate the complexities of modern society has been recognized by many of the same jurisdictions that adopted products liability to protect the modern consumer. In Humber v. Morton, 426 S.W.2d 554 (Tex. 1968), the Texas court found that a vendor-builder of a new home impliedly warrants that it was constructed in a good, workmanlike manner and is suitable for human habitation. The court held that under Texas law the implied warranty is a tort concept rather than a contract concept, citing Jacob E. Decker & Sons Inc. v. Capps, In Schipper v. Levitt & Sons, Inc., 44 N.J. 70, 207 A.2d 314, 326 (1965), the court observed:
[The] contention that Caveat emptor should be applied and the deed viewed as embodying all the rights and responsibilities of the parties disregards the realities of the situation. Caveat emptor developed when the buyer and seller were in an equal bargaining position and they could readily be expected to protect themselves in the deed. Buyers of mass produced development homes are not on an equal footing with the builder vendors and are no more able to protect themselves in the deed than are automobile purchasers in a position to protect themselves in the bill of sale.
See Elderkin v. Gaster, 447 Pa. 118, 288 A.2d 771 (1972), for additional cites and a discussion of the erosion of the doctrine of caveat emptor in the sale of new homes by the builder/vendor. In Degnan v. Executive Homes, Inc., 215 Mont. 162, 696 P.2d 431 (1985), the court recognized the implied warranty of habitability of a new residence as a legal duty placed on the builder/vendor which does not depend upon the contract for its existence, and held that breach of such a legal duty is a tort.
In Cooper v. United Development Co., 122 Ill. App.3d 850, 78 Ill.Dec. 510, 516, 462 N.E.2d 629, 635 (1984), the court observed: "The implied warranty of habitability is a judicial innovation which evolved, as a matter of public policy, to protect purchasers of new houses upon discovery of latent defects in their homes." Noting that the warranty of habitability does not arise out of the execution of a deed, but "exists independently as an undertaking collateral to the covenant to convey," the court ruled that the applicable Illinois statute of limitations, where the plaintiffs sought compensation for damages rather than enforcement of any specific provision of a written contract, was the five-year period for actions on implied contracts or for property damage, not the ten-year period for written contracts. Id. It relied on Lato v. Concord Homes, Inc., 659 S.W.2d 593, 594 (Mo. App. 1983), in which the Missouri court held that a claim alleging breach of express and implied warranties in a construction contract for a home was not an action to enforce compliance with the terms of the contract, so as to fall under the ten-year statute of limitations for "an action upon any writing ... for the payment of money *380 or property," but was "one based upon an alleged breach of incidental or implied terms of the contract" and therefore governed by the five-year statute of limitations.
In Donovan v. Pruitt, 36 Wash. App. 324, 674 P.2d 204, 207 (1983), the court ruled that the implied warranty of habitability did not arise out of the written contract evidencing the sale and was therefore not subject to the six-year statute of limitations governing such actions, but "rather, it came into existence by operation of law by virtue of a common law duty of strict liability that the builder-seller owed to the first purchaser-occupant." It relied on Bicknell v. Garrett, 1 Wash.2d 564, 96 P.2d 592 (1939), which explained that the six-year statute of limitations applies to "liabilities which are either expressly stated in a written agreement or which follow by natural and reasonable implication from the promissory language of the agreement, as distinguished from liabilities created by fictional process of the law or imported into the agreement from an external source." The Donovan court observed: "Historically, the action was judicially created as a policy matter to meet a felt need to protect new home owners from the ruinous potentialities caused by construction defects `which vitally affect the structural stability or preclude occupancy of the building' even in the absence of any fraud or deceit by the vendor-builder (cite omitted)." 674 P.2d at 207.
Kansas has held that a homeowner's action for breach of an implied warranty may sound in tort or contract, depending upon the nature of the interests protected, i.e., whether the plaintiff is seeking the benefits of the contract or merely a recovery for his loss. Ware v. Christenberry, 7 Kan. App. 2d 1, 637 P.2d 452 (1981). In Woodward v. Chirco Construction Co., 141 Ariz. 514, 687 P.2d 1269, 1271 (1984), the court ruled that the six-year statute of limitations for contracts, not the two-year statute of limitations for torts, applied to the claim for breach of an implied warranty of workmanlike performance and habitability, observing that a purchaser could seek recovery in contract for structural defects, "as such defects render the home less than the purchaser bargained for," and in tort for "injuries sustained due to the contractor's failure to construct the home as a reasonable contractor would."
In Cabal v. Donnelly, 302 Or. 115, 727 P.2d 111 (1986), the question of whether an action on an implied warranty of habitability sounded in tort or in contract related to whether attorney fees could be awarded. The court noted that opinion has been divided on this issue and referred to its opinion in Securities-Intermountain v. Sunset Fuel, 289 Or. 243, 611 P.2d 1158, 1167 (1980), in which it described the two causes of action:
If the alleged contract merely incorporates by reference or by implication a general standard of skill and care to which the defendant would be bound independent of the contract, and the alleged breach would also be a breach of this noncontractual duty, then [the tort statute of limitations] applies. [cite omitted]. Conversely, the parties may have spelled out the performance expected by the plaintiff and promised by the defendant in terms that commit the defendant to this performance without reference to and irrespective of any general standard. Such a defendant would be liable on the contract whether he was negligent or not, and regardless of facts that might excuse him from tort liability. Or the nature either of the defendant's default or of the plaintiff's loss may be of a kind that would not give rise to liability apart from the terms of their agreement. [footnote omitted].
The Cabal court observed that the implied warranty of habitability has a dual nature, and held that: "Where, as here, the injury is one directly contemplated by the contract of sale, i.e., decreased value of premises due to failure to make them habitable, it is the contract that has been breached." 727 P.2d at 114.
In determining which statute of limitations applies to a cause of action, the criterion is usually the origin and nature of the liability asserted. The courts will look to the plaintiff's complaint to determine the *381 real purpose of the action and whether it is an action for personal injuries or breach of contract. 51 Am.Jur.2d Limitation of Actions § 105. There is authority that a warranty which the law implies from the existence of a written contract is as much a part of the contract as the express terms, so that an action for breach of an implied warranty is governed by the statute of limitations applicable to written contracts. But there is also authority that, since a writing which is dependent upon statutorily implied warranties to state the promise allegedly breached fails to state all of the contract terms in writing, it does not qualify for application of the statute of limitations which governs written contracts, even though the warranty may be partly stated in writing. 54 C.J.S. Limitations of Actions § 62. It has been held that a contract statute of limitations applies only where the contract is the whole basis for recovery and no element of personal injury is involved. Bland v. Smith, 197 Tenn. 683, 277 S.W.2d 377 (1955). The statutory description of an action as "founded on an instrument in writing" or equivalent phrase refers to contracts, obligations, or liabilities growing, not remotely or ultimately, but immediately, out of written instruments. 54 C.J.S. Limitations of Actions § 60.
Villalobos v. University of Oregon, 47 Or. App. 103, 614 P.2d 107 (1980), was an action for wrongful death (a student stabbed in his dormitory) in two counts: negligence and breach of an implied warranty of "habitability and safety." The theory on the latter count was that the decedent had surrendered control of his person and security to the university, which thereafter breached an implied contractual duty, arising from the tenancy, to protect him from the criminal activities of third persons. The trial court ruled the action barred by the two-year statute of limitations. On appeal, plaintiff contended the six-year statute of limitations for actions on express or implied contracts was applicable. The appellate court held that the claimed breach of warranty was substantially a breach of the duty to exercise reasonable care concerning security precautions, so that the applicable statute of limitations was that governing tort actions.
In Tamblyn v. Mickey & Fox, Inc., 195 Colo. 354, 578 P.2d 641 (1978), the court noted that the dispositive test is whether the statute of limitations, by its terms, applies to the action at issue, "rather than the tort or contract nature of the action seeking compensation." In that case, the court held that where the homeowners' claims appeared to relate only to deficiencies in the real property improvement itself and did not seek damages for personal injuries or harm to other real or personal property, the action was covered by the six-year statute of limitations, not the special two-year limitation of actions against architects, contractors, engineers and inspectors, notwithstanding that the claims were based on negligence rather than breach of contract or warranty.
The question at issue similarly seems to turn, not on whether the action is characterized as sounding in tort or in contract, but rather on whether the specific statutory language of section 95.11(2)(b) includes the action involved in this case. To the extent that the statutory description of an action as "founded on an instrument in writing" or equivalent phrase refers to contracts, obligations, or liabilities growing, not remotely or ultimately, but immediately, out of written instruments, C.J.S., supra, this section does not apply to an action for breach of the implied warranty of habitability of a new residence.
This is a logical interpretation of the limitations statute, when all sections are read in pari materia. Certainly, the Florida Legislature did not intend different limitations periods to apply to the same action, breach of the implied warranty of habitability of a new residence, depending upon the type of contract involved in the sale, since the type of contract or its specific terms have no effect on the implied warranty of habitability, which arises as a matter of law from the relationship of the parties to the sales transaction. Section 95.11(2)(b) is therefore logically construed to apply only to actions which arise from or *382 relate to the specific language of the written instrument.
AFFIRMED.
JOANOS, C.J., and WOLF, J., concur.
NOTES
[1] In that case, which involved leaky warehouse roofs, the court declined to decide whether an action for breach of the implied warranty recognized for residences should also be recognized for commercial buildings. It held that there was no express oral warranty, that the four-year statute of limitations was applicable "on the other claims," and that the statute was not tolled by the repairs.
[2] That case involved a bus passenger, traveling from Miami to New York, who sued the bus company after an accident, claiming it had breached a written contract for transportation (the ticket). The court ruled that a contract of a common carrier to transport a passenger to a given destination imposes on the carrier an obligation to do so in a reasonably safe manner, that what the law implies from the relation of the parties created by the contract is as much a part of the contract as its express terms, and that the obligation was therefore founded on the written instrument, so that the five-year statute of limitations applied.
[3] See Jones v. Bright, 130 Eng.Rep. 1167 (C.P. 1829), relying in part on Chandelor v. Lopus, 79 Eng.Rep. 3 (Ex. 1603), an action on an express warranty.
[4] See Meeker, The Effect of Statutes of Limitation on Implied Warranty Actions, 5 Washburn L.J. 62 (1965), and Butler, The Implied Warranty of Habitability  Contract or Tort?, 31 Baylor L.Rev. 207 (1979), for further discussion of the dual tort-contract nature of implied warranties.