Argued and submitted December 2, 2003, reversed and remanded August 4, 2004

Glenn R. ARCHAMBAULT
and Terri D. Magruder,
husband and wife,
*Appellants,*

*v.*

Howard OGIER
and Phyllis Ogier, aka Phyllis Smith,
individuals,
*Respondents.*

99-1121-L-2; A118679

95 P3d 257

Garrison F. Turner argued the cause and filed the briefs for appellants.

Thomas C. Howser argued the cause and filed the brief for respondents.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Plaintiffs purchased real property from defendants. Nearly six years later, when plaintiffs discovered what they believed to be a variety of defects in the physical condition of the premises, they initiated this action for "breach of contract," alleging that defendants had failed to deliver the property in the condition described in an earnest money agreement and in a disclosure statement. Defendants moved for summary judgment on the ground that the action is time-barred. According to defendants, the action actually is one for misrepresentation, which is subject to a two-year statute of limitations. The trial court agreed and entered summary judgment dismissing the complaint. Plaintiffs appeal, arguing that the trial court erred in concluding that the action is time-barred. We agree with plaintiffs and reverse and remand.

In reviewing the trial court's ruling on summary judgment, we review the record in the light most favorable to the nonmoving party to determine whether there are genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. ORCP 47 C.

In this case, the relevant facts are not in dispute. Defendants owned two contiguous, rural parcels of land, Tax Lots 501 and 505. Tax Lot 501 is developed with a residence and outbuildings. Tax Lot 505 is developed with a barn. In 1993, defendants listed the properties for sale with a broker.

At that time, defendants completed a disclosure statement describing various features of the property. At the top of the disclosure statement was a paragraph entitled "NOTICE TO THE BUYER," which contained the following disclaimer:

> "The following is a disclosure statement made by the seller, concerning the condition of the property * * *. This disclosure is not a warranty of any kind by the seller or any agent of the seller in this transaction, and is not a substitute for any inspections or warranties the buyer may wish to obtain."

The statement then described a number of details pertaining to the property relating to, among other things, title, water,

sewage, insulation, structure, personal property, and the like. The statement also stated:

"B.   Other conditions or defects

"Are you aware of any other conditions affecting or any defects regarding the property or its value that the prospective buyer should know about?

"[ ] Yes   [X] No"

The statement was dated and signed by defendants. The disclosure statement also included an acceptance provision:

"A.   Buyer * * * hereby acknowledges receipt of a copy of this disclosure statement * * * bearing seller's signature and acknowledges that buyer has not received or relied upon any statements made by seller's agents which are not expressed in this disclosure statement.

"B.   Each buyer acknowledges receipt of a complete copy of this disclosure statement showing each seller's signature.

"C.   Each buyer acknowledges and understands that this disclosure statement is not intended as a substitute for any inspection I/we wish to obtain and that I/we have a duty to exercise reasonable care to protect myself/ourselves and the duty to pay diligent attention to those material defects which are known to me/us or can be known by me/us by utilizing diligent attention and observation."

Plaintiffs read and approved the disclosure statement. They submitted a written offer to purchase the property in the form of a "Sale Agreement and Receipt for Earnest Money." Among other things, the earnest money agreement contained the following provisions:

"Seller represents that the well has provided an adequate supply of water during the entire year for household use * * *.

"Seller represents that: (1) the dwelling is connected to: a **septic tank**; (2) the dwelling is connected to: **an onsite water well**; (3) Seller has no knowledge of any material structural defect; (4) all built-in appliances, electrical wiring, heating, cooling and plumbing systems are in good working order; (5) the balance of the property including yard will be in substantially its present condition at the

time Buyer is entitled to possession; (6) Seller has no knowledge of any liens to be assessed against the property; (7) Seller has no notice from any governmental agency of any violation of law relating to the property[.]"

(Boldface in original.) The earnest money agreement also contained the disclaimer that "[t]his transaction [ ] **is** [X] **is not** contingent upon Buyer's approval of Seller's Disclosure Statement to be supplied within ten (10) business days of Seller's acceptance[.]" (Boldface in original.)

Plaintiffs' offer was subject to several conditions, among them plaintiffs' approval of well flow and contaminants tests to be performed at plaintiffs' expense. Defendants submitted a counteroffer, which plaintiffs accepted. The counteroffer referred to the property as "legally described" as "Tax Lots 501 and 505 Tax Map 381W13" and incorporated the terms of the earnest money agreement.

Plaintiffs received and approved the results of the well tests. The transaction closed and plaintiffs took possession on May 18, 1993. Shortly thereafter, they discovered that the septic system did not function properly, the well did not produce sufficient water to support the household, and the solar hot water system and hot tub did not function. They later learned that, contrary to their understanding, the two lots were not separately "buildable."

Nearly six years later, on March 31, 1999, plaintiffs filed a complaint against defendants for breach of contract. The complaint alleged that plaintiffs purchased the property pursuant to the terms of a contract consisting of the earnest money agreement and the disclosure statement and that defendants breached that contract by delivering premises that did not conform to the descriptions and representations contained in the contract. Among other things, the complaint alleged that the property failed to conform because (1) the property had never been legally divided into two separately developable lots; (2) the septic system did not work properly; (3) the hot tub and solar panels were inoperable; and (4) the water well proved inadequate and unsafe.

Defendants ultimately moved for summary judgment, asserting that the claim is time barred. According to

defendants, although denominated a claim for "breach of contract," plaintiffs' claim actually is one for misrepresentation, which is subject to a two-year statute of limitations. ORS 12.110. In any event, defendants argued, plaintiffs' claim derives from the representations in the disclosure statement, and plaintiffs waived any right to rely on that document.

The trial court agreed with defendants. It concluded that plaintiffs' complaint alleged "misrepresentation, not breach of specific contractual provisions." The court also concluded that the disclosure statement contained "representations by the sellers and not warranties or promises" and that plaintiffs had waived any right to rely on the disclosure statement by stating in the earnest money agreement that the transaction was not contingent on plaintiffs' approval of the disclosure statement. The court granted defendants' motion and dismissed the complaint.

On appeal, plaintiffs advance three assignments of error, each asserting a different reason why the trial court erred in granting defendants' summary judgment motion: (1) the disclosure statement states contractual obligations; (2) plaintiffs did not waive the right to rely on the disclosure statement; and (3) in any event, defendants breached contractual obligations stated in the earnest money agreement, independent of the obligations in the disclosure statement. Defendants respond that (1) the disclosure statement contains representations, not contractual obligations; and (2), in any event, plaintiffs expressly waived the right to rely on the disclosure statement. Interestingly, defendants do not respond directly to plaintiffs' argument that the earnest money agreement contains contractual obligations independently of the disclosure statement. To the contrary, defendants expressly assume that "[a]ll of plaintiffs' claims rely upon the disclosure statement." Defendants do, however, suggest that, even if the earnest money agreement otherwise contained contractual obligations regarding the condition of the property, those obligations did not survive closing under the doctrine of merger.

At the outset, we note that, in actuality, plaintiffs advance a single assignment of error. Assignments of error target rulings, not reasons for rulings. *Coast Range Conifers*

*v. Board of Forestry*, 189 Or App 531, 535, 76 P3d 1148 (2003).

■     We need not address whether the disclosure statement announces mere representations, as opposed to contractual obligations, because we conclude that defendants are correct in asserting that plaintiffs expressly waived the right to rely on the disclosure statement. The earnest money agreement provided that the transaction was "not contingent upon [plaintiffs'] approval" of the disclosure statement. There is no contention that the waiver was inconspicuous or otherwise unenforceable. *See, e.g., Young v. Continental Crane & Rigging Co.*, 183 Or App 563, 53 P3d 465 (2002) (discussing unenforceability of inconspicuous waivers). Plaintiffs' only argument appears to be that they never intended the statement in the earnest money agreement to mean that the contract was not contingent upon defendants complying with the disclosure statement. The problem with the argument is that, regardless of what plaintiffs subjectively may have intended, that is precisely what the earnest money agreement says.

■■     We turn to the ultimately dispositive issue, that is, whether plaintiffs' claims that are based on the representations in the earnest money agreement alone are contractual in nature. The fact that a contract contains representations does not necessarily mean that a failure to comply with those representations gives rise to a claim in tort. As the Supreme Court explained in *Securities-Intermountain v. Sunset Fuel*, 289 Or 243, 259, 611 P2d 1158 (1980), the statute of limitations for tort actions "certainly does not contemplate that a defendant can defeat an action for breach of his contract by asserting that, independent[ly] of the contract, his own conduct constituted a tort, whether negligence or, for instance, fraud." The proper focus, the court has instructed, is whether the source of liability is the negligent performance of a contractual obligation or a breach of the contractual obligation itself. Thus, in *Georgetown Realty v. Home Ins. Co.*, 313 Or 97, 106, 831 P2d 7 (1992), the court stated:

"When the relationship involved is between contracting parties, and the gravamen of the complaint is that one

party caused damage to the other by negligently performing its obligations under the contract, then, and even though the relationship between the parties arises out of the contract, the injured party may bring a claim for negligence if the other party is subject to a standard of care independent of the terms of the contract. If the plaintiff's claim is based solely on a breach of a provision in the contract, which itself spells out the party's obligation, then the remedy normally will be only in contract, with contract measures of damages and contract statutes of limitation. That is so whether the breach of contract was negligent, intentional, or otherwise. In some situations, a party may be able to rely on either a contract theory or a tort theory or both."

*See also Conway v. Pacific University*, 324 Or 231, 237, 924 P2d 818 (1994) ("[A] contract details the specific obligations that each party owes the other and, if one party breaches a term of the contract, that breach will result in contract liability.").

Thus, for example, in *Cabal v. Donnelly*, 302 Or 115, 727 P2d 111 (1986), the plaintiffs purchased a residence from a builder. When they took possession, however, they discovered that the plumbing and bathroom fixtures and the septic system were not in good working order. They initiated an action for breach of contract, specifically, breach of an implied warranty of habitability. At issue was whether plaintiffs' claim sounded in contract or in tort. Citing *Securities-Intermountain*, the court concluded that the claim sounded in contract: "The plaintiffs in this case contracted to buy a residence. What they got was something less." *Cabal*, 302 Or at 122.

In this case, we are not confronted with an implied warranty of habitability. Instead, we are confronted with an earnest money agreement that *expressly* specifies that the property to be sold is in a certain condition. Specifically, defendants represented to plaintiffs, among other things, that the dwelling located on the property was connected to a septic tank, that the dwelling was connected to a working well, and that built-in appliances, heating, and plumbing systems were in "good working order." Plaintiffs alleged in their complaint that the property that defendants delivered to them was not in the condition that defendants represented it

to be. As in *Cabal*, in this case, plaintiffs contracted to buy a residence and, more particularly, a residence with specified appliances and fixtures in good working order. Their claim based on defendants' failure to deliver the house in the condition that they represented it to be therefore sounds in contract and is therefore subject to the six-year statute of limitations stated in ORS 12.080.

■  That leaves defendants' argument that, even if that is so, the trial court properly granted summary judgment because, under the doctrine of merger, any contractual obligations concerning the nature of the property that were expressed in the earnest money agreement did not survive closing.

■■  Under the doctrine of merger, when a deed is delivered pursuant to the terms of a previous agreement, the deed "supersedes the contract as to all its provisions made pursuant to the terms of the latter[.]" *City of Bend v. Title & Trust Co.*, 134 Or 119, 127, 289 P 1044 (1930). However, contractual provisions that are not included in the deed and do not affect the title, possession, quantity, or emblements of the land are deemed collateral to the promise to convey, *Johnston v. Lindsay*, 206 Or 243, 248-49, 292 P2d 495 (1956), and merge "only to the extent that the parties intended the deed to be the final memorial of their bargain." *Soursby v. Hawkins*, 307 Or 79, 84, 763 P2d 725 (1988). Here, the alleged breaches involve collateral terms because they do not affect the title, possession, quantity, or emblements of the property. Thus, they merged into the deed only if the parties intended the deed to be the final memorial of their agreement. In *Jensen v. Miller*, 280 Or 225, 231, 570 P2d 375 (1977) (quoting *City of North Bend v. County of Coos*, 259 Or 147, 152, 485 P2d 1226 (1971)), the Supreme Court said:

> "The doctrine of merger should operate only where it is reasonable to assume that the parties contemplated the extinction of their contractual rights and duties upon the execution of the deed."

The court said, further, that the determination of the parties' intentions is a matter of fact to be adduced from the evidence at trial. *Jensen*, 280 Or at 232.

In this case, the deed itself makes no mention of merger, and there is no other evidence that the parties intended to extinguish their contractual rights or obligations not expressly embodied in the deed. We conclude, accordingly, that the record on summary judgment does not support affirming the trial court on the alternative ground that the parties' contractual rights have merged into the deed.

Reversed and remanded.