Argued and submitted March 6, on appeal, reversed in part and remanded; on cross-appeal, dismissed as moot October 29, 2014

RIVERVIEW CONDOMINIUM ASSOCIATION,
an Oregon non-profit corporation,
*Plaintiff-Appellant*
*Cross-Respondent,*

*v.*

CYPRESS VENTURES, INC.,
an Oregon domestic business corporation,
*Defendant,*

*and*

BANK ONE ARIZONA, NA,
a national banking association;
Michael S. Morse, an individual;
and Daniel S. Bracken, an individual,
*Defendants-Respondents,*

*and*

BROOKFIELD DEVELOPMENT, INC.,
an Oregon domestic business corporation,
*Defendant-Respondent*
*Cross-Appellant.*

BROOKFIELD DEVELOPMENT, INC.,
an Oregon domestic business corporation,
*Third-Party Plaintiff,*

*v.*

Peter ZAIKIN,
dba Anytime Construction;
Mike Anfilofieff, dba Final Finish Carpentry;
Modern Tech Construction, Inc., an Oregon corporation;
Rain-Master Roofing, Inc., an Oregon corporation;
and N.W. Cutting Edge Const., Inc., an Oregon corporation,
*Third-Party Defendants.*
Multnomah County Circuit Court
100710713; A150586

339 P3d 447

Ryan D. Harris argued the cause for appellant-cross-respondent. With him on the briefs were Vial Fotheringham LLP and Thomas M. Johnson.

Peter Hawkes argued the cause for respondents Bank One Arizona, NA, and Daniel S. Bracken. With him on the brief was Lane Powell PC.

Lori DeDobbelaere argued the cause for respondent Michael S. Morse. With her on the brief was Lachenmeier Enloe Rall & Heinson.

Bruce R. Gilbert argued the cause for respondent-cross-appellant. With him on the briefs were Stephan E. Archer and Smith Freed & Eberhard P.C.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Lagesen, Judge.

DUNCAN, P. J.

## DUNCAN, P. J.

Plaintiff, a condominium association, appeals after the trial court dismissed, based on the statute of repose and statute of limitations, plaintiff's claims against defendants. In those claims, plaintiff alleged that defendants were negligent during construction of the condominium buildings, concealed known defects in the buildings, and mismanaged the condominium association and its finances before they turned it over to the unit owners. For the reasons that follow—many of which derive from cases that were decided after the trial court ruled—we conclude that the court erred in granting summary judgment on plaintiff's construction-defect and nuisance claims, which allege injuries to plaintiff's interest in real property and are governed by a six-year statute of limitations, but we affirm the court's dismissal of claims alleging financial harm, which are governed by a two-year statute of limitations. Accordingly, we reverse in part and remand for further proceedings.

## I.  BACKGROUND

### A.  *Facts*

Because this case comes to us after the grant of defendants' motions for summary judgment, we state the relevant facts in the light most favorable to plaintiff, the nonmoving party. *Loosli v. City of Salem*, 345 Or 303, 306 n 1, 193 P3d 623 (2008).[1]

Cypress Ventures, Inc. (Cypress Ventures) was owned by Lowell Morse; his son, defendant Michael Morse, was its president. Lowell Morse also owned a 1/3 interest in Brookfield Development, Inc. (Brookfield), which is also a defendant in this case. Cypress Ventures hired Brookfield to act as the general contractor for a condominium development, a three-building, 17-unit condominium known as the Riverview Condominium. Cypress Ventures also hired Brookfield to develop townhomes next to the condominium development.

---

[1] There are multiple summary judgment motions at issue in this case, and the trial court record developed differently for various motions. To the extent that those differences are significant, we address them later in our analysis of particular assignments of error.

In 1999, Brookfield started construction on the Riverview Condominium. Construction continued through the first part of 2000, and all three of the buildings received final permits and certificates of occupancy by May 10, 2000. Brookfield received its final payment from Cypress Ventures that same month.

Shortly thereafter, on July 27, 2000, Cypress Ventures recorded with Multnomah County the declaration, association bylaws, and plat that submitted Riverview Condominium to the condominium form of ownership, as governed by the Oregon Condominium Act, ORS chapter 100. The recording also established the Association of Unit Owners of Riverview Condominium (the Association), which is the plaintiff in this action. The Association is composed of all unit owners.

Under the Association's bylaws, Cypress Ventures— the "declarant" of the condominium—had the power to appoint and replace the Association's directors and officers until three years after the first unit was sold or 75 percent of the units (*i.e.*, 13 of the 17 units) had been sold, which- ever came first. Cypress Ventures installed Lowell Morse, along with Steve Eck, Brookfield's president, as two of the Association's three interim directors.

Cypress Ventures then began to sell individual units. The first unit sold on August 10, 2000. However, Cypress Ventures encountered financial difficulties and sold only one more unit before deeding its interest in the Riverview Condominium, in lieu of foreclosure, to its creditor, defendant Bank One Arizona (Bank One), on December 29, 2000. In conjunction with that property transfer, Lowell Morse and the Association's other interim board members resigned, and Bank One, now the successor "declarant" of the condominium, installed its own board members, includ- ing defendant Daniel Bracken, a vice president for Bank One, to direct the Association.

A year later, in December 2001, Bank One sold the 13th unit of the condominium, which triggered the "turn- over" process under the bylaws whereby Bank One was to cede its control over the Association's board. On February 21,

2002, the Association held the turnover meeting, and the unit owners elected their own board members to direct the Association.

At some point after the turnover, unit owners began experiencing water intrusion into their units. At a condo association meeting in early 2003, unit owners and board members discussed "problems with leaking windows" in the units. The first documented repair occurred in the fall of 2003, in unit 4C. The Association hired Himango Siding to repair the leaking windows in that unit. The invoice for the repair work, which was submitted to the board in November 2003, included the following notation:

> "Supplied labor and material to remove necessary existing siding on front wall of unit 4-C, determine cause of leaks in unit 4-C windows, repair leaks and reinstall new and existing siding as necessary.
>
> "* * * * *
>
> "FYI: the reason these windows leaked is as follows: the original siders ran there [sic] building paper over the top of the window opening weather strip instead of under it so water that gets in at the bottom of upper windows can get behind the paper [and] run down the wall and into the top of the bottom windows. We used a sticky rubber membrane to create a positive seal from the window flange to the paper so if water does get past the caulking over time it must stay on the outside of the building paper."[2]

After that repair was made, the board continued to receive reports of water leaks. Sometime between 2004 and 2006, another owner, Sara Berreth, developed a leak in the bedroom windows of her unit. Berreth had been elected as a board member at the turnover meeting and served as the Association's treasurer. The Association hired Darren Williams to repair her leaking windows. Williams repaired the leaks but told Berreth that his repair work would not provide a permanent fix "because of the way it was constructed."[3]

---

[2] The invoice was submitted to NW Community Management, a management firm that assisted the board in its duties. For purposes of this opinion, it is not necessary to distinguish between the board and NW Community Management.

[3] Berreth believes that she discussed with the board what Williams told her, but she did not testify as to when that occurred.

Another unit owner, Shawn Smith, who later served on the Association's board from 2005 to 2008, discovered in 2004 that his windows in his master bedroom were leaking. He noticed that water was leaking from around the top of the windows and that the caulking was sagging. Smith's windows were repaired in September 2004, and he spoke with the contractor who performed those repairs. The contractor told Smith that "there's two different styles of siding from the bottom unit to the top unit, that the interface between those two was done incorrectly, and that around the windows themselves something to do with flashing, the way it was installed was funneling water into—over the windows, and then it was coming down in the walls and pooling." Smith relayed that information to the Association's board.

In a letter dated July 27, 2004, a property manager, Gordon Properties, LLC, notified the board that "three out of the five of the condos that we manage have leaking windows. The windows have leaked for as long as we have managed them, which is all the way back to when the first tenants moved in." Then, in October 2004, the Association received a report that unit 4C was continuing to experience water leaking from windows, and that the fire alarm in unit 4C had been set off by "water coming through the alarm unit from 4D." The fire department had forced its way into unit 4D and "concluded the water [was] coming from the upper unit 4D walls." The report, which was made by the owner of unit 4C, requested "help in getting this water damage resolved by sending out a building inspector and contractor to take care of this problem."

Gordon Properties, which managed unit 4D, recommended that the Association hire Sherman Rake Company to address leaks in various windows, and the Association hired Sherman Rake in 2005. The price of that repair work was $12,120, and Sherman Rake noted in its May 2005 invoice that it found that water had been trapped by the belly band—*i.e.*, where the panel siding transitions to lap siding. Sherman Rake further noted its "[c]oncerns that water could be coming from areas other than around the windows. If such is the case, [Sherman Rake] will not be responsible for on-going water damage that might occur in

the future that is caused by anything other than [Sherman Rake's] workmanship." One of the Association's board members at that time, Angela Long, spoke with Sherman Rake about the repair work and was told that "flashing was put on backwards or something of that nature."

In February 2006, Long discovered that her own bedroom windows were leaking, and she brought that to the attention of the rest of the board. Also in 2006 or 2007, Smith discovered that his bathroom windows were leaking—the same problem that he had experienced earlier with his bedroom windows. At that time, approximately nine of the 17 units had reported window-related issues, and of the units that had not reported problems, some were vacant or rentals.

As previously noted, Cypress Ventures and Brookfield had also developed townhomes next to the Riverview Condominium. Sometime in 2003 or 2004, Smith noticed that those townhomes were having their siding replaced. Smith spoke with the head of the homeowners association for the townhomes and was told that their association was having the siding and windows replaced because of problems with leaking. Once the condominium units began developing problems with leaking, the Association discussed what had happened at the townhomes.[4]

Water-intrusion problems continued in the condominium through 2006 and 2007, and the Association hired Building Enclosure Design & Inspection Corporation ("BEDIC") in 2008 to perform an inspection "focused on building enclosure issues and * * * related to current condition and resulting remaining useful life concerns." BEDIC issued a report in early November 2008 that concluded, among other things, that "[o]verall the siding assembly is not performing," that water was entering wall cavities with no place to escape, and that parts of the substrate were rotting. The report concluded that extensive siding replacement and rot

---

[4] The summary judgment record does not include evidence of the precise nature or timing of those discussions. In his deposition, Smith was asked, "And so when you guys—the Riverview Condo Association started having issues with your windows, did you discuss what had happened with the townhomes?" He responded, "Yes," but did not further elaborate.

repair were necessary—expenses that would well exceed the Association's reserves and would require a dramatic increase in monthly dues.

## B. *Procedural History*

On July 22, 2010, the Association filed this action against Brookfield, Bank One, Michael Morse, and Bracken.[5] In their complaint, the Association alleged that water intrusion and resulting damage to the condominium buildings were the direct result of faulty design, faulty workmanship, improper maintenance, defective material, improper construction, and noncompliance with building codes and manufacturer specifications—referred to throughout the complaint as "construction defects." In its first claim for relief, the Association alleged that each of the defendants had been negligent in concealing or failing to discover the defects, and in not repairing them. In other specifications under that claim, the Association alleged that defendants had been negligent in failing to responsibly budget for the repairs and by concealing the inadequacy of the Association's reserves and assessments for repairs.

In addition to its negligence claim, the Association alleged, against Michael Morse, Bank One, and Bracken, claims for negligent misrepresentation; intentional or reckless misrepresentation; breach of fiduciary duty; and violations of the Condominium Act and nondisclosure. Against Morse, Bank One, and Brookfield (but not Bracken), the Association alleged a claim for nuisance based on water intrusion. And, against Bank One, the Association further alleged claims for breach of contract, breach of express statutory warranty, and breach of implied warranty.

Amid extensive pleading and motions practice (much of which involved third-party claims that are not at issue in this appeal), defendants filed a series of summary judgment motions. The first of those motions, filed by Brookfield, asserted that all of the Association's claims against it were barred by two alternative statutes of repose:

---

[5] Cypress Ventures was named as a defendant in this action but never appeared and is not a party on appeal. Accordingly, we do not discuss the Association's claims against Cypress Ventures, which are not at issue.

ORS 12.115, which applies generally to negligent injury to property, and ORS 12.135, which applies specifically to actions arising from construction. Those statutes, which will be discussed later in more detail, both provide 10-year statutes of repose but have different triggers: ORS 12.115 runs the 10-year period from the date of the "act or omission complained of," whereas ORS 12.135 runs the 10-year period from the date of "substantial completion" of construction. Brookfield argued that both statutes applied and that, under either, the Association's claims were untimely because all of Brookfield's construction was completed in May 2000, more than 10 years before the complaint was filed on July 22, 2010.

In response, the Association argued that ORS 12.135—and not ORS 12.115—was the applicable statute of repose, and that there remained genuine issues of material fact as to the date of "substantial completion" of the Riverview Condominium. Alternatively, the Association argued that, even if the more general statute, ORS 12.115, were to apply, there nonetheless remained genuine issues of material fact as to whether, because of the close relationship between Brookfield and Cypress Ventures, the running of the statute of repose had been tolled until control of the Association was turned over to unit owners in February 2002.

In ruling on Brookfield's motion, the trial court initially observed that most of the Association's allegations against Brookfield concerned defects arising from the work Brookfield performed as a general contractor, but that the complaint also included "allegations which seek to hold Brookfield liable for budget and reserve studies, assessment levels and maintenance." The trial court explained that Brookfield's motion for summary judgment was based solely upon the statute of repose, and that the motion "did not address the issue of whether Brookfield had liability for events arising after completion of construction." Thus, the court expressly declined to grant summary judgment with respect to claims arising from activities that occurred after construction, including specifications of negligence based on Brookfield's post-construction involvement in management and sale of the units, operation of the Association,

and preparation of the Association's budget and assessment levels, as well as the nuisance claim, to the extent that the claim was directed at Brookfield's post-construction activity—*i.e.*, ignoring the signs of defects while knowing that water intrusion would result.

With respect to "claims having to do with the construction"—*i.e.*, "construction-defect" claims, the trial court agreed with Brookfield that both statutes of repose applied, but it reached different conclusions under each statute. In applying ORS 12.135, the more specific, construction-related statute, the trial court ruled that Brookfield's proffered evidence—establishing the dates of Brookfield's last work, Cypress Venture's last payment, and issuance of certificates of occupancy—did not "directly say that [Cypress Ventures] factually accepted the project," the trigger for the statute of repose. *See* ORS 12.135(4)(b) (defining "substantial completion" to include "the date of acceptance of the completed construction, alteration or repair of such improvement by the contractee"). For that reason, the court denied Brookfield's motion to the extent that it was predicated on the statute of repose set forth in ORS 12.135(1)(b).

Nonetheless, the court granted Brookfield's motion with regard to construction-defect claims based on the more generally applicable statute of repose. Applying ORS 12.115, the court concluded that all of Brookfield's construction-related activities had ended by May 2000, and it rejected the Association's tolling arguments. Accordingly, the court entered an order that disposed of all of Brookfield's claims, save the two specifications of negligence and the nuisance allegations that concerned post-construction conduct by Brookfield.

Brookfield then filed another summary judgment motion against "[e]ach of the remaining claims, as identified by the prior motion for summary judgment ruling."[6] As for

---

[6] Although the parties expressed some confusion as to which allegations the trial court was referring, Brookfield's summary judgment motion identified those surviving allegations as follows:

"(1) Brookfield played a role in property management and sale of units, establishment, oversight or operation of the association, preparation of the association budget, and establishment and maintenance of assessment levels;
(2) Michael Morse was acting as an agent of Brookfield when he served as

the post-construction negligence specifications, Brookfield argued that there was no evidence that it had actually managed or sold units or overseen the affairs of the Association. With regard to the nuisance claim, Brookfield argued that the claim was subject to a six-year statute of limitations for interference with an interest in real property under ORS 12.080(3), and that that limitations period had already run. The court agreed that the nuisance claim was untimely, and it granted the motion to dismiss that claim; however, it denied Brookfield's motion with respect to allegations that Brookfield was negligent in certain post-construction matters pertaining to oversight and management of the Association and its finances, leaving those specifications of negligence as the only remaining bases for a claim against Brookfield.[7]

Meanwhile, Michael Morse had filed his own motion for summary judgment. In his motion, Morse argued that, as a result of the trial court's earlier ruling on Brookfield's motion for summary judgment on the statute of repose, the construction-defect claims against Morse were likewise barred, leaving the following claims against him: (1) negligent misrepresentation; (2) intentional misrepresentation; (3) breach of fiduciary duty; and (4) violation of the Oregon Condominium Act and nondisclosure. And, Morse argued, those remaining claims were barred by the two-year statute of limitations, ORS 12.110, because the Association knew or should have known of the existence of the claims before July 22, 2008. Alternatively, Morse argued that he was immune from personal liability because all of his actions were taken in his capacity as a corporate officer.

At that point, Brookfield joined in Morse's motion, arguing that any remaining specifications of post-construction negligence were barred by the statute of limitations for the

---

initial director or operator of the Association; and (3) Brookfield was aware of, and intentionally ignored the signs of construction defects resulting in Nuisance to the Association."

(Internal citations omitted.)

[7] The court also granted the motion with respect to an allegation that Michael Morse was an employee of Brookfield during construction. The Association conceded that point in the trial court, and that aspect of the court's order is not at issue on appeal.

reasons set forth in Morse's motion. Bank One and Bracken likewise joined Morse's motion, arguing that all of the claims against them (including construction-related claims) "violate the statute of limitations and/or statute of ultimate repose." However, unlike Morse, who had argued that the construction-related claims were no longer at issue and did not require a statute-of-limitations analysis at all, Bank One and Bracken specifically raised the statute of limitations as another basis upon which to dismiss the Association's construction-defect claims against them.

During the hearing on the joint motions, the court proceeded as though the only "remaining" claims against any defendants were based on *post-construction* conduct. Nonetheless, the court understood the timing of discovery of the construction defects to be a necessary part of the analysis. The court explained, "I understand * * * I'm not ruling on construction defects, but the—if—if there are alleged construction defects and there's knowledge of the defects *I think that's what's at issue*, not the conversion of that into a, oh, well, then useful life converts from X to Y and assessments must go from W to Z." (Emphasis added.) The court then explained that

> "there were plenty of red flags of a size and color * * * such that no reasonable juror could conclude other than that the board after the departure of the individual or entity defendants was on notice of problems of a size and character that should've led them to conclude—and, indeed, they did conclude—the evidence that the assessments were inadequate or that the financial—the financial wherewithal of the organization was inadequate."

Accordingly, the trial court ruled that "all claims remaining against defendants Morse, Brookfield, Bank One and Bracken are barred by the running of the statutes of limitations as a matter of law." Based on that ruling, and the earlier summary judgment rulings that preceded it, the court entered a general judgment dismissing all claims against all defendants.

The Association now appeals that general judgment, assigning error to the trial court's rulings that (1) all construction-defect claims are governed and barred by ORS

12.115, the general statute of repose for negligence claims, and (2) all claims were barred by the applicable statute of limitations. In cross-assignments of error, Brookfield argues that the trial court erred in denying its motion for partial summary judgment regarding Brookfield's role in the management or sale of the condominium units or the operation of the Association; whether Eck was acting for Brookfield on the Association's board; and whether Brookfield was the alter ego of Cypress Ventures.

## II. ANALYSIS

### A. *Statutes of Repose*

#### 1. *ORS 12.135 is the applicable statute of repose.*

As described above, Brookfield's first summary judgment motion asserted that the Association's claims were barred by two separate statutes of repose: ORS 12.115 and ORS 12.135(1). The former provides that "[i]n no event shall any action for negligent injury to person or property of another be commenced *more than 10 years from the date of the act or omission complained of*." ORS 12.115(1) (emphasis added). The other statute of repose, ORS 12.135(1), provides:

> "(1) An action against a person by a plaintiff who is not a public body, whether in contract, tort or otherwise, arising from the person having performed the construction, alteration or repair of any improvement to real property or the supervision or inspection thereof, or from the person having furnished design, planning, surveying, architectural or engineering services for the improvement, must be commenced before *the earliest of*:
>
> "(a) The applicable period of limitation otherwise established by law;
>
> "(b) *Ten years after substantial completion* or abandonment of the construction, alteration or repair of a small commercial structure, as defined in ORS 701.005, a residential structure, as defined in ORS 701.005, or a large commercial structure, as defined in ORS 701.005, that is owned or maintained by a homeowners association, as defined in ORS 94.550, or that is owned or maintained by an association of unit owners, as defined in ORS 100.005 ＊＊＊."

(Emphasis added.)

The trial court ruled that both statutes of repose could be applied to the same claim, because ORS 12.115 was "the applicable period of limitation otherwise established by law," as contemplated by ORS 12.135(1)(a). The court then ruled that the Association's construction-defect claims were untimely under ORS 12.115, because they were commenced more than 10 years after the "act or omission complained of"—*i.e.*, negligence during the construction of the building.

In its first assignment of error, the Association argues that the trial court erred in ruling that ORS 12.115 applies to, and bars, its construction-defect claims. According to the Association, ORS 12.135 is the more specific statute of repose for construction-related claims, thereby displacing ORS 12.115 in this context. Defendants, for their part, concede that subsequently decided case law supports the Association's contention regarding ORS 12.115.

After the trial court ruled on the Association's construction-defect claims, this court decided *Sunset Presbyterian Church v. Brockamp & Jaeger*, 254 Or App 24, 31, 295 P3d 62 (2012), *aff'd on other grounds*, 355 Or 286, 325 P3d 730 (2014), and addressed the interplay between ORS 12.115 and ORS 12.135. We held, consistently with the Association's contention, that ORS 12.115 is inapplicable when that claim arises from a defendant's construction of an improvement to real property:

"Contrary to the subcontractors' contention, ORS 12.135(1) controls over the more general repose statute for negligence claims, *viz.*, ORS 12.115. ORS 12.135(1) applies specifically to claims against a person arising from that person's construction of an improvement to real property 'whether in contract, tort or otherwise.' Accordingly, it controls over the more general negligence provision of ORS 12.115 and is the repose statute that applies to plaintiff's claims."

254 Or App at 31. In light of our decision in *Sunset Presbyterian Church*, we conclude that the trial court erred in dismissing the Association's construction-related claims under ORS 12.115.

2.   *"Substantial completion" under ORS 12.135*

Defendants, although conceding that the trial court erred in applying ORS 12.115, argue that we should

nevertheless affirm the dismissal of the construction-defect claims because they are barred by ORS 12.135. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (explaining the conditions that must be satisfied in order for a reviewing court to affirm a trial court on an alternative basis). As set out above, that statute of repose runs not from the date of the "act or omission complained of," but from the date of "substantial completion," which is defined as:

"the date when the contractee accepts in writing the construction, alteration or repair of the improvement to real property or any designated portion thereof as having reached that state of completion when it may be used or occupied for its intended purpose *or, if there is no such written acceptance, the date of acceptance of the completed construction, alteration or repair of such improvement by the contractee.*"

ORS 12.135(4)(b) (emphasis added).

In its summary judgment motion, Brookfield argued that Cypress Ventures, as "the contractee," had accepted the "completed construction" of the Riverview Condominium by May 2000. In support of the motion, it offered a declaration from Eck, Brookfield's president, who averred that "[a]ll construction and supervision activities performed by Brookfield Development were completed at the time the final permits were issued for the Riverview Condominiums in May of 2000," and that "Brookfield Development received last payment for the construction of the Riverview Condominiums in May of 2000." Brookfield also offered copies of final permits and certificates of occupancy for the condominiums that were issued in May 2000.

The trial court considered, but ultimately rejected, Brookfield's contention that it had established the date of "substantial completion" as a matter of law. The court explained:

"The Eck Declaration relates to factual acceptance. It provides information about Brookfield's last work, and Cypress's last payment. The permit review documents and certificates of occupancy * * * relate to the state of completion and suitability for occupancy. *But neither of those pieces of evidence directly say that Cypress factually accepted the*

*project. For that reason, on this record I cannot tell whether, or when, ORS 12.135(1)(b) was triggered."*

(Footnote omitted; emphasis added.)

On appeal, defendants argue that the trial court rejected their arguments because it did not have the benefit of subsequent developments in the law—this time, developments that, in defendants' view, favored them. In *Sunset Presbyterian Church*, in addition to holding that ORS 12.135 was the applicable repose statute, we considered whether a genuine issue of material fact existed as to the date of "substantial completion" of construction. 254 Or App at 34. We framed the inquiry as follows:

"* * * [T]he subcontractors had to submit evidence to establish that there was no disputed issue of fact about whether plaintiff accepted the facility as complete more than 10 years before it filed its action on March 16, 2009. *In other words, they had to establish that there was no factual dispute about whether plaintiff took from the general contractor responsibility for the maintenance, alteration, and repair of the facility before March 16, 1999.*

"We conclude that they failed in that task. Plaintiff submitted evidence that construction work continued after March 14, 1999, specifically identifying changes to the [electrical] system, fire-alarm system, and landscaping. *A reasonable trier of fact could conclude that plaintiff had not assumed responsibility for the maintenance, alteration, and repair of the improvement until after that work was complete.* Hence, a genuine issue of material fact exists regarding whether substantial completion occurred more than 10 years before plaintiff filed its claims, and it was error for the trial court to grant summary judgment to the subcontractors on the ground that ORS 12.135 barred plaintiff's claims against them."

254 Or App at 34-35 (emphases added).

Shortly after we decided *Sunset Presbyterian Church*, we again considered the meaning of "substantial completion" in *PIH Beaverton, LLC v. Super One, Inc.*, 254 Or App 486, 294 P3d 536 (2013). We explained that

"consideration of the text [of ORS 12.135(3)] shows that the second clause of [that statute] applies only when a

contractee has accepted construction that *actually* has been completed. That interpretation is consistent with the legislative history establishing that the point of completion is reached, for purposes of the second clause of ORS 12.135(3), 'when the contractee takes from the contractor responsibility for the maintenance, alteration, and repair of the improvement, *which typically, if not invariably, will be the point at which little or no work remains to be done by the contractor.' Sunset Presbyterian Church*, 254 Or App at 34. Thus, it is possible that a contractee might not accept construction of an improvement to real property as having been 'completed' (for purposes of the second clause of ORS 12.135(3)) until some time after the date on which the contractee occupied the improvement or otherwise started utilizing the improvement for its intended purpose (and the project would have been considered 'substantially complete' under the first clause of ORS 12.135(3) if the contractee had provided the required 'written acceptance')."

254 Or App at 498-99 (second emphasis added). We then went on to conclude that the record in *PIH Beaverton, LLC* was not susceptible to summary judgment regarding the date of substantial completion, because it included "evidence suggesting both that work on the project was not completed until sometime after the date on which [the contractee] occupied the hotel and that [the contractee] did not accept the construction as completed until that later time." *Id.* at 499.

The Supreme Court subsequently affirmed our decision in *PIH Beaverton, LLC* and agreed that, "to meet the terms of the second clause of ORS 12.135(3), a defendant must establish the date on which the construction was fully complete, not the date on which it was sufficiently complete for its intended use or occupancy." *PIH Beaverton, LLC v. Super One, Inc.*, 355 Or 267, 284, 323 P3d 961 (2014). The court then explained that the defendant had not established that date beyond factual dispute:

"The summary judgment record in this case gives rise to a material question of fact about whether [the contractee] accepted the construction that was the subject of the contract between the parties as fully complete by February 13, 1997. On the one hand, evidence in the record shows that [the contractee] obtained a certificate of temporary occupancy, posted a completion notice, and began accepting

guests on February 13, 1997. On the other hand, the record also shows that construction work continued after that date, and the county did not issue the certificate of final occupancy for the hotel until September 24, 1997. The trial court erred in concluding, as a matter of law, that [the contractee] accepted completed construction on February 13, 1997, and granting summary judgment on that basis."

*Id.*

Even assuming that defendants' argument under ORS 12.135(1) would otherwise satisfy the requirements for affirmance on alternative grounds,[8] it fails on the merits. Under ORCP 47, "[t]he adverse party has the burden of producing evidence on any issue raised in the motion *as to which the adverse party would have the burden of persuasion at trial.*" (Emphasis added.) Because the statute of repose is an affirmative defense, defendants had the burden of persuasion on that issue. *T. R. v. Boy Scouts of America*, 344 Or 282, 299, 181 P3d 758 (2008) (stating the analogous proposition with regard to the statute of limitations). Thus, if there is an absence of evidence on an issue of fact that is material to defendant's statute of repose argument, that omission defeats that argument. *Keller v. Armstrong World Industries, Inc.*, 342 Or 23, 38 n 12, 147 P3d 1154 (2006).

The decisions in *PIH Beaverton, LLC* and *Sunset Presbyterian Church* explored the question of when construction is "completed," but they did not eliminate the requirement that the contractee "accept" the completed construction. And, as the trial court in this case correctly observed, Brookfield's proffered evidence did not directly address that critical fact: when Cypress Ventures *accepted* the Riverview Condominium as complete. Neither

---

[8] We harbor doubts as to whether it would be appropriate to exercise our discretion to affirm on an alternative basis, considering the procedural posture of this case. Because of the sequence of summary judgment motions, the summary judgment record looked very different by the time that Morse, Bank One, and Bracken "joined" in the statute of repose arguments. *Cf. Mt. Fir Lumber Co. v. Temple Dist. Co.*, 70 Or App 192, 198, 688 P2d 1378 (1984), *limited on other grounds by Payless Drug Stores v. Brown*, 300 Or 243, 708 P2d 1143 (1985) ("Even if the determination was wrong at the time the court ruled on the motion [for summary judgment], it would nevertheless be a systematic perversion for the nonmoving party's inability to show the existence of a fact question at the summary judgment stage to deprive it of a judgment after a trial at which it established that questions of fact existed and prevailed on them.").

the certificates of occupancy (one of which actually lists *Brookfield* rather than Cypress Ventures as the "owner"), nor the city permits, required action on the part of Cypress Ventures; moreover, Cypress Ventures did not file a "Notice of Completion" of the Riverview Condominium for recording with Multnomah County until December 2000. A reasonable trier of fact could infer from Brookfield's proffered evidence that the Riverview Condominium buildings were complete, and Cypress Ventures accepted them as such, before filing the notice of completion, but a trier of fact would not be *compelled* to draw that inference on this record. Thus, we decline defendants' invitation to uphold the trial court's dismissal of their construction-defect claims on the alternative ground that they are barred by ORS 12.135.[9]

B.  *Statutes of Limitations*

After dismissing the Association's construction-defect claims against Brookfield based on the statute of repose, the trial court entertained subsequent motions by the parties and dismissed all of the Association's "remaining" claims on the ground that they were barred by the applicable statutes of limitations. The Association's second assignment of error states, "[t]he trial court erred when it ruled the Association's claims were barred by the statute of limitations." And, under that single assignment of error, the Association argues that all of its claims were timely— including the nuisance claim, which was the subject of a separate summary judgment motion and ruling. The parties' arguments are, for the most part, joined as to all of the claims, so we consider the Association's assignment of error notwithstanding its failure to comply with ORAP 5.45(3), which requires parties to assign error separately to different rulings.[10]

---

[9]  In their response brief, Bank One and Bracken argue that they never actually performed construction-related functions, and ORS 12.135 therefore does not apply to the claims against them. We decline to address that argument, which is made for the first time on appeal and is inconsistent with the efforts by Bank One and Bracken to align themselves with the other defendants in the trial court.

[10]  The exceptions are the Association's breach of contract and breach of express and implied warranty claims against Bank One and Bracken, which the Association does not separately address in its briefing. Because those claims pose distinct legal questions regarding the statute of limitations but are not discussed at all in the Association's briefing, we affirm with respect to those claims. *E.g.,*

Notwithstanding the fact that the parties' arguments are joined on most points, the seriatim nature of the summary judgment rulings, and each defendant's joinder in the other's arguments (regardless of consistency[11]), complicates our review of the trial court's rulings. At the summary judgment hearings, many of the claims were discussed collectively, and it is not always clear which statute of limitations the court was applying. Because the various claims are potentially subject to different statutes of limitations, we proceed on a claim-by-claim basis.

1. *Construction-defect claims*

a. Applicable statute of limitations

We begin by addressing the Association's construction-defect claims—*i.e.*, claims based on defendants' negligence during construction. The threshold question, which the trial court did not explicitly resolve, is which statute of limitations applies to those claims. According to the Association, the construction-defect claims are subject to the six-year statute of limitations set forth in ORS 12.080(3) "for interference with or injury to any interest of another in real property," which, they argue, is subject to a discovery rule. Defendants, meanwhile, argue that construction-defect claims are subject to the two-year statute of limitations set forth in ORS 12.110(1), which provides that "[a]n action * * * for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years * * *." Alternatively, defendants argue that, even if the six-year statute of limitations applies, that period does not include a discovery rule and has long since expired.

---

*Garcez v. Freightliner Corp.*, 188 Or App 397, 404, 72 P3d 78 (2003) (declining to address a plaintiff's arguments that his state-law claims were erroneously dismissed where the plaintiff's brief "contain[ed] no reference to the standard of review applicable to his Oregon law claims or to the significance of the trial court's findings with respect to those claims").

[11] For instance, Morse argued that claims related to construction defects, having previously been ruled upon, "are not part of the case and a statute of limitations analysis is unnecessary." Bank One and Bracken, while joining in Morse's arguments in their entirety, urged the court to rule on whether the construction-defect claims were barred by the statute of limitations.

The parties' arguments require us to confront a tension that has developed in the Supreme Court's case law. The Association, in urging a six-year statute of limitations, relies on the Supreme Court's decision in *Beveridge v. King*, 292 Or 771, 778-79, 643 P2d 332 (1982). In *Beveridge*, the "defendant was a builder of residential homes" who "entered into a written contract with defendant for the purchase of land and a new house that was under construction by [the] defendant." *Id.* at 773. More than two years after discovering "things that had to be completed and fixed" by the defendant, the plaintiffs commenced an action against him, alleging

"that [the] defendant had contracted 'to furnish all labor and materials necessary for completing construction of the house,' that an implied term of the written contract was that [the] defendant would 'construct the house in a workmanlike manner' and that he had 'failed substantially to perform under said contract in that he failed to construct such residence in a good and workmanlike manner.' [The] [p]laintiffs then pleaded some 18 particulars of defendant's alleged failure to perform his contract. Some of the particular complaints were of failure to complete certain work; some complaints were of the use of improper technique; and some complaints were a mixed bag of the first two categories. The damages sought were the amounts of money necessary to remedy the defects alleged."

*Id.*

The defendant in *Beveridge* alleged that the claims were not timely commenced, and the plaintiffs sought partial summary judgment on that issue. The plaintiffs argued that the governing statute of limitations was six years, citing ORS 12.080(1) and (3). At that time, those subsections provided:

"(1)   An action upon a contract or liability, express or implied, excepting those mentioned in ORS 12.070 and 12.110 and except as otherwise provided in ORS 72.7250;

"* * * * *

"(3)   An action for waste or trespass upon or for interference with or injury to any interest of another in real property, excepting those mentioned in ORS 12.050, 12.060, 12.135 and 273.241; * * *

"* * * * *

"shall be commenced within six years."

The defendant likewise moved for summary judgment, arguing that the applicable statute of limitations was two years, as set forth in ORS 12.135 (1981), *amended by* Or Laws 1983, ch 437, § 1. Between 1971 and 1981, ORS 12.135(1) provided that

> "an action to recover damages for injuries to a person or to property arising from another person having performed the construction, alteration or repair of any improvement to real property or the supervision or inspection thereof, or from such person having furnished the design, planning, surveying, architectural or engineering services for such improvement, shall be commenced within two years from the date of such injury to the person or property * * *."[12]

The trial court, relying on this court's decision in *Securities-Intermountain v. Sunset Fuel*, 40 Or App 291, 594 P2d 1307 (1979), ruled that ORS 12.135(1) was the governing statute of limitations, granted defendant's motion for summary judgment, and denied the plaintiffs' motion.

The plaintiffs appealed and, by the time they filed their briefs in the Court of Appeals, the Supreme Court had issued its own decision in *Securities-Intermountain v. Sunset Fuel*, 289 Or 243, 611 P2d 1158 (1980). In *Securities-Intermountain*, the Supreme Court interpreted ORS 12.135(1) narrowly—as applying only to actions for bodily injuries and physical damage to existing tangible property, and not to actions to recover "financial losses such as a reduced value of the completed project due to the unsatisfactory performance of the work or the added cost of satisfactory completion or replacement." 289 Or at 251. Based on that intervening and narrow construction of ORS 12.135(1), the defendant in *Beveridge* shifted his argument. 292 Or at 774-75. Rather than relying on the two-year statute of limitations in ORS 12.135(1), the defendant urged this court to affirm the trial court's ruling on the ground that the plaintiffs' action was barred by the catchall two-year statute of limitations, ORS 12.110(1). 292 Or at 775.

---

[12] In 1983, the legislature replaced the two-year statute of limitations in ORS 12.135(1) with "[t]he applicable period of limitation otherwise established by law," which is how the statute currently reads.

This court reversed the trial court in a divided opinion, *Beveridge v. King*, 50 Or App 585, 623 P2d 1132 (1981) (holding that the plaintiffs' action was an action on a contract and therefore subject to ORS 12.080(1) rather than ORS 12.110(1)), and the Supreme Court accepted review of the case "to consider whether some clarification or refinement of our decision in *Securities-Intermountain* should be undertaken." 292 Or at 775. After adhering to its narrow construction of ORS 12.135(1), the Supreme Court turned to the

"[d]efendant's position * * * that [the] plaintiffs' cause is really one for damages resulting from alleged negligence of the defendant in performing the services of his trade or calling. He contends that we have previously held that such actions are governed by ORS 12.110(1), citing cases which we have previously discussed at length in [*Securities-Intermountain*]."

292 Or at 776.

The court in *Beveridge* then explained that, in order for ORS 12.110(1) to apply, "two factors must be present: (1) the action must not be one 'arising on contract' and (2) the action must be 'not especially enumerated in this chapter [12].'" *Id.* Thus, "[i]f we accept, as did the majority of the Court of Appeals, that this is simply an action upon a contract under ORS 12.080(1), the judgment of that court must be affirmed, and the defendant loses." 292 Or at 777. Alternatively, "[i]f we assume, as defendant necessarily contends, that it is not an action upon a contract, the defendant can prevail only if this is not an 'action * * * for interference with or injury to any interest of another in real property.'" *Id.* at 778 (quoting ORS 12.080(3)).

The Supreme Court then concluded that the defendant's argument failed under either alternative:

"* * * [D]efendant cannot prevail here upon any theory that a two-year statute of limitations is applicable. The two-year period prescribed by ORS 12.135(1) is not applicable because of our construction of that statute in [*Securities-Intermountain*]. ORS 12.110(1) *is not applicable either because the action does arise on contract or because the injuries here were to the interests of 'another' in real property and the action to recover damages for those injuries is especially enumerated in ORS 12.080(3).*"

292 Or at 778-79. In a footnote following that text, the Supreme Court pointed out that "the plaintiff in [*Securities-Intermountain*] did not invoke ORS 12.080(3)." 292 Or at 779 n 6.

In short, the plaintiffs in *Beveridge* alleged a claim that the defendant failed to construct their home in a workmanlike manner, and they sought the "amounts of money necessary to remedy the defects alleged." *Id.* at 773. The Supreme Court held that that claim, to the extent that it did not arise on contract, fell within the scope of ORS 12.080(3) and was subject to a six-year statute of limitations. *See Cabal v. Donnelly*, 302 Or 115, 120, 727 P2d 111 (1986) (explaining that *Beveridge* "left open the question whether an action on an implied warranty of habitability is one in contract or in tort" and instead "held that the general two-year statute of limitations did not apply *either* because the action was one in contract *or* because the action was to recover damages for injury to the interests of another in real property and, as such, was specifically enumerated in ORS 12.080(3)" (emphasis in *Cabal*)).

Two years later, we applied the holding in *Beveridge* to a claim that a defendant architect breached a duty to supervise the moving, construction and remodeling of an office building, thereby causing the plaintiff to incur damages. *Taylor v. Settecase*, 69 Or App 222, 685 P2d 470, *appeal dismissed*, 298 Or 68 (1984). We held that the six-year statute of limitations in ORS 12.080(3) was applicable, explaining:

> "The injuries alleged in the present case do not differ materially from the injuries alleged in *Beveridge*. Although the court's rationale in *Beveridge* was alternatively grounded in ORS 12.080(1) and 12.080(3), we hold that in the present case the allegations of injuries are those to 'any interest of another in real property * * *.' ORS 12.080(3). Therefore, they are 'especially enumerated in * * * chapter [12]' and are outside the ambit of ORS 12.110(1)."[13]

69 Or App at 228.

---

[13] In a footnote in that paragraph, we noted, as did *Beveridge*, that "the plaintiff in [*Securities-Intermountain*] did not invoke ORS 12.080(3)." *Taylor*, 69 Or App at 228 n 6.

Shortly after *Taylor*, we again held that ORS 12.080(3) applied to claims involving construction defects. *Sutter v. Bingham Construction, Inc.*, 81 Or App 16, 724 P2d 829 (1986). In *Sutter*, the defendant agreed to build an office building for the plaintiffs, and, after the plaintiffs occupied the completed building, they discovered that the roof leaked. More than two years later, they commenced an action against the defendant for building a leaking roof. *Id.* at 18. The trial court dismissed their complaint, ruling that ORS 12.110(1) barred their claim. *Id.*

On appeal, we reversed the decision of the trial court and held, as we had in *Taylor*, that "any interest of another in real property" is broad enough to encompass a claim that the plaintiff received a defective building. We expressly rejected the defendant's attempts to distinguish or cabin *Taylor* and *Beveridge*:

"Defendant asserts three reasons why ORS 12.080(3) should not apply to this action. First, it argues that ORS 12.080(3) applies only to actions where the injury to real property is caused by a 'substantial invading force,' citing *Reter v. Talent Irrigation District*, 258 Or 140, 482 P2d 170 (1971). That contention is clearly incorrect in the light of *Beveridge* and *Taylor*. Second, it argues that ORS 12.080(3) does not apply, because it 'did not injure any interest that plaintiffs had in the property prior to construction of the building at issue.' The court in *Beveridge* apparently held that the plaintiff's interest in receiving a nondefective house was sufficient to invoke ORS 12.080(3). We do not understand how plaintiffs' interest in receiving a building without a leaky roof is distinguishable. Finally, defendant argues that *Beveridge* should be limited to cases involving the construction of residential homes. We did not recognize that distinction in *Taylor*, nor do we see a basis for the distinction in the broad language of ORS 12.080(3): 'any interest of another in real property.'"

*Sutter*, 81 Or App at 21.

*Sutter* essentially remained the last word on the application of ORS 12.080(3) and ORS 12.110(1) to construction-defect claims in Oregon for roughly 25 years, as neither the Supreme Court nor this court was called upon to squarely address the issue. Then, in 2011, the Supreme Court decided

*Abraham v. T. Henry Construction, Inc.*, 350 Or 29, 249 P3d 534 (2011)—the case upon which defendants in this case base their arguments. The issue in *Abraham* was "[w]hether a claim for property damage arising from construction defects may lie in tort, in addition to contract, when the homeowner and builder are in a contractual relationship." 350 Or at 33. The statute of limitations was not at issue in *Abraham*, but in describing the underlying facts—specifically, when reciting that the plaintiffs discovered extensive water damage in their home more than six years after it was constructed—the court included the following footnote:

> "The statute of limitations for contract actions is six years. ORS 12.080(1). *Tort claims arising out of the construction of a house must be brought within two years of the date that the cause of action accrues*, but, in any event, within 10 years of the house being substantially complete. *ORS 12.110*; ORS 12.135. Tort claims ordinarily accrue when the plaintiff discovers or should have discovered the injury. *Berry v. Branner*, 245 Or 307, 311-12, 421 P2d 996 (1966)."

350 Or at 34 n 3 (emphasis added).

Defendants seize on that footnote and argue that, regardless of what the law might have been before *Abraham*, we now have an unambiguous statement from the Supreme Court regarding the applicable statute of limitations for tort claims arising out of negligent construction. Thus, they argue, the Association's claims in this case are subject to the two-year statute of limitations in ORS 12.110(1).

Although we appreciate that *Abraham* casts something of a cloud on the applicability of ORS 12.080(3), we do not understand the footnote in that case to have any precedential value. Most important, it is unquestionably *dictum*, considering that the statute of limitations was not one of the issues before the court. *Engweiler v. Persson / Dept. of Corrections*, 354 Or 549, 557, 316 P3d 264 (2013) ("When the court's prior construction [of a statute] is mere *dictum*, however, it has no such precedential effect."). But apart from that, we find it highly unlikely that the Supreme Court intended to implicitly disavow the reasoning in one of its own cases, *Beveridge*, and effectively overrule well established Court of

Appeals precedent, by way *of dictum* in a footnote that does not acknowledge any of that case law. Accordingly, we follow *Beveridge*, *Taylor*, and *Sutter*, and hold that the Association's construction-defect claims allege injury to the "interest of another in real property" and are therefore governed by the six-year statute of limitations in ORS 12.080(3).[14]

b.   Accrual of the claims

The Association argues that the construction-defect claims are not susceptible to summary judgment under ORS 12.080(3) because a jury could draw competing inferences as to whether it knew or should have known of the existence of those claims before July 22, 2004—*i.e.*, six years before its complaint was filed. In their responsive briefing, defendants offer two rejoinders: First, they contend that ORS 12.080(3) does not include a discovery rule and that the statute of limitations began to run in May 2000 when construction was completed or, at the latest, when the first damage was suffered, which indisputably occurred in late 2003 when Himango Siding was hired to repair water damage. Second, they argue that, even if ORS 12.080(3) includes a discovery rule, then the Association's construction-defect claims still accrued by late 2003, because the Association not only suffered damage but was told by Himango Siding that the water damage occurred because building paper had been installed incorrectly.

Contrary to defendants' first argument, ORS 12.080(3) does incorporate a "discovery rule." Once again, the question is informed by a case decided after the trial court's ruling in this case. Earlier this year, the Supreme Court decided *Rice v. Rabb*, 354 Or 721, 725, 320 P3d 554 (2014), and held that the discovery rule does, in fact, apply to tort actions referenced in ORS 12.080. In the light of *Rice*, we conclude that the Association's

---

[14] We note that the Supreme Court recently flagged, but was not required to resolve, a question about the potential applicability of ORS 12.080(3). *See Sunset Presbyterian Church*, 355 Or at 292 n 6 ("ORS 12.080 imposes a six-year statute of limitations for actions for injury to any interests of another in real property. ORS 12.110 imposes a two-year statute of limitations for actions for injury to the rights of another not arising on contract and not especially enumerated in chapter 12. We do not decide which of those statutes of limitations is applicable in this case.").

construction-defect claims are subject to a discovery rule. *See Tavtigian-Coburn v. All Star Custom Homes, LLC*, 266 Or App 220, 337 P3d 925 (2014) (explaining that the reasoning in *Rice* applies equally to the statute of limitations in ORS 12.080(3)).

We turn, then, to the application of that rule. Under a discovery rule, the limitations period begins to run from the earlier of two possible events: "(1) the date of the plaintiff's *actual discovery* of injury; or (2) the date when a person exercising reasonable care *should have discovered* the injury, including learning facts that an inquiry would have disclosed." *Greene v. Legacy Emanuel Hospital*, 335 Or 115, 123, 60 P3d 535 (2002) (emphasis in original). Discovery of an "injury" occurs when a plaintiff knows or should have known of the existence of three elements: "(1) harm; (2) causation; and (3) tortious conduct." *Gaston v. Parsons*, 318 Or 247, 255, 864 P2d 1319 (1994) (so stating with regard to ORS 12.110(4)). Thus, "the facts that a plaintiff must have discovered or be deemed to have discovered include not only the conduct of the defendant, but also, under *Gaston*, the tortious nature of that conduct." *Doe v. Lake Oswego School District*, 353 Or 321, 331, 297 P3d 1287 (2013).

For purposes of determining what facts a plaintiff should have known, "[t]he discovery rule applies an objective standard—how a reasonable person of ordinary prudence would have acted in the same or a similar situation." *Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or 270, 278, 265 P3d 777 (2011). Ordinarily, the application of that standard presents a factual question for the jury, but the question is susceptible to judgment as a matter of law if "the only conclusion a reasonable jury could reach is that the plaintiff knew or should have known the critical facts at a specified time and did not file suit within the requisite time thereafter." *T. R.*, 344 Or at 296.

On the record before us, we are not persuaded that the only conclusion that a jury could reach is that, by July 22, 2004, the Association should have discovered the critical facts that would have alerted it to harm caused by tortious conduct on the part of defendants. The Association's claims

are based on the theory that defendants knew or should have known of the construction defects and did nothing to remedy them. There is no dispute that, as of July 22, 2004, the Association was aware that unit owners and board members were having "problems with leaking windows" in the units, and that the contractor hired to repair leaks in unit 4C believed they were caused because the "original siders" had improperly installed building paper so that water was entering and running down the walls and into the windows. However, based on those facts, a trier of fact could find that the Association, as of July 22, 2004, was aware of window leaks but reasonably believed those problems to have been confined to certain windows. Thus, we cannot say, as a matter of law, that the reports of window leaks and the information from Himango Siding necessarily put the Association on notice that defendants, in supervising the "original siders" or overseeing the project, might have themselves engaged in tortious conduct by failing to discover or concealing defects that caused pervasive leaks that would damage common elements of the buildings and require the buildings to be re-sided.

There is evidence in the record, which we will later discuss, that similar leaks were reported in other units between 2004 and 2006; that by late July 2004, a property manager, Gordon Properties, LLC, notified the board that "three out of the five of the condos that we manage have leaking windows"; and that sometime in 2003 or 2004, the board was told that neighboring townhomes developed by Cypress Ventures and built by Brookfield were having their siding and windows replaced because of problems with leaking. However, the record does not compel the conclusion that the board knew or should have known of any of those facts before July 22, 2004. That is because the record does not identify the specific dates on which those leaks occurred or the specific dates on which the information was conveyed to the Association. Thus, given the lack of specificity in the record about the precise dates on which those events occurred, we cannot conclude that that additional evidence compels a conclusion that the Association knew or reasonably should have discovered the critical facts underlying its claims against defendants by July 22, 2004.

In sum, we conclude that there remain genuine issues of material fact as to whether the Association knew or should have known the critical facts giving rise to its construction-defect claims before the expiration of the six-year statute of limitations in ORS 12.080(3). Accordingly, defendants were not entitled to summary judgment on those claims based on the statute of limitations.

2. *Negligent and intentional misrepresentation*

a. Applicable statute of limitations

In its claims based on misrepresentation, the Association alleged that Bank One, Morse, and Bracken made various representations during the course of the development of the Riverview Condominium, sale of units, and involvement with the Association that those defendants knew, or should have known, were false. Defendants moved for summary judgment on those claims based on the expiration of the two-year statute of limitations in ORS 12.110(1). The Association responded, like with its construction-defect claims, that they were instead subject to the six-year statute of limitations set forth in ORS 12.080(3) "for interference with or injury to any interest of another in real property."

As defendants correctly observe, misrepresentation claims are generally governed by the two-year statute of limitations in ORS 12.110(1), which expressly refers to actions for "deceit" and applies to injuries to the rights of another "not arising on contract, and not especially enumerated in this chapter." *E.g.*, *Ogan v. Ellison*, 297 Or 25, 34-35, 682 P2d 760 (1984) (applying ORS 12.110(1) to the plaintiffs' claim that the defendants had fraudulently misrepresented that the real property that the plaintiffs had purchased from the defendants had been lawfully partitioned prior to the sale); *Burgdorf v. Weston*, 259 Or App 755, 768, 316 P3d 303 (2013), *rev den*, 355 Or 380 (2014) (applying ORS 12.110(1) to the plaintiff's claim "that defendant intentionally misrepresented that he was moving to Oregon so that plaintiff would loan him money and pay the expenses associated with [a piece of real property]"); *Bodunov v. Kutsev*, 214 Or App 356, 164 P3d 1212 (2007) (applying ORS 12.110(1) to the plaintiff's claims based on the defendants' fraudulent

misrepresentations in connection with the purchase of a farm, mobile homes, and a migrant camp); *McGann v. Boyd*, 124 Or App 409, 862 P2d 577 (1993), *rev den*, 319 Or 273 (1994) (applying ORS 12.110(1) to a claim that the defendant misrepresented the zoning of the property and whether it could be subdivided).

However, as described above, that two-year limitations period does not apply to claims that arise from a contract or if a different period is "especially enumerated" elsewhere in ORS chapter 12. *See, e.g., Beveridge*, 292 Or at 778-79; *Archambault v. Ogier*, 194 Or App 361, 369, 95 P3d 257 (2004) (holding that a claim based on the "defendants' failure to deliver the house in the condition that they represented it to be therefore sounds in contract and is therefore subject to the six-year statute of limitations stated in ORS 12.080"). In the Association's view, ORS 12.080(3) "especially enumerates" a different limitations period for misrepresentation claims that allege "interference with or injury to any interest of another in real property * * *." The Association argues that defendants' misrepresentations are "about the useful lives of the building components as contained in the reserve study" and disclosures to purchasers about "the cost of living in the Association." According to the Association, those "misrepresentations interfered with an interest in real property because they concealed the true conditions of the building, the obligations each purchaser was undertaking with purchase, and the pre-turnover Association's knowledge of water damage to the buildings." Additionally, the Association argues, "misrepresentations about the financial health of the Association necessarily interfere with each unit owner's interest in real property by decreasing the value of the owner's property, adding undisclosed obligations to the owner's property interests, and potentially subjecting the owner's unit to an automatic lien for these undisclosed obligations."

We have previously rejected a similar attempt to characterize a claim as "interference with or injury to any interest of another in real property" where the conduct, although related to real property, caused only economic loss to the plaintiff. In *Morrison v. Ardee Pest Control*, 62 Or App 506, 661 P2d 576 (1983), the plaintiffs entered into

an earnest money agreement to purchase a home, and their agent hired the defendant to conduct a dry rot inspection of that home. The defendant conducted the inspection and reported to the plaintiffs that only the back porch area had dry rot, which could be repaired for $300 to $350. Based on the defendant's report, the plaintiffs purchased the property. The plaintiffs later discovered dry rot throughout a substantial portion of the dwelling in the window areas, and they brought negligence and breach-of-contract claims against the defendant.

The trial court in *Morrison* ruled that the plaintiffs' claims sounded in tort and were untimely under the two-year statute of limitations in ORS 12.110(1). On appeal, the plaintiffs argued that their claims instead were governed by the six-year period in ORS 12.080(3) for injury to real property. We recognized that the scope of ORS 12.080(3) was an open question, but we ultimately disagreed with the plaintiffs' argument. We explained:

"Although we agree that the question is an open one, the nature of plaintiffs' injury here differs in kind from that suffered by the plaintiff in *Beveridge*, where the defendants' conduct allegedly caused damage *to the dwelling*. Here, plaintiffs purchased the dwelling in reliance on defendant's inspection report; if they were harmed by defendant's conduct, it was because they had not been correctly informed as to the extent to which the dwelling *had been damaged by dry rot*, inducing plaintiffs to purchase it. Thus, the *property* was not injured by defendant's conduct; it was injured by the dry rot.[1] Neither was there an injury to plaintiffs' interest in the property. *The injury caused by the allegedly negligent inspection was to plaintiffs' pocketbook. Accordingly, we hold that plaintiffs' negligence count is barred by ORS 12.110(1).*

_____

"[1] There is no indication in plaintiffs' complaint that the dry rot caused additional damage subsequent to the inspection that could have been arrested had defendant informed plaintiff of the problem."

(Final emphasis added.)

Here, as was the case in *Morrison*, the Association's misrepresentation claims are more accurately characterized

as alleging an injury to the Association's pocketbook, not to real property. As we understand the gravamen of the Association's claims, it is that unit owners would not have purchased the units if they had known about the defects and financial situation, and that the Association and its members were damaged financially by defendants' misrepresentations during the sale of units and oversight of the Association.[15] We are not aware of, and the Association has not directed us to, any case in which ORS 12.080(3) has been applied so broadly. Accordingly, consistently with our decision in *Morrison*, we hold that the two-year statute of limitations in ORS 12.110(1) governs the Association's misrepresentation claims.

### b. Discovery of the claims

We next consider whether the Association's claims are timely under ORS 12.110(1). On the record before us, we agree with defendants that the Association should have discovered its injury by at least 2007—well over two years before the Association filed its complaint. By that point, the Association was aware of the following facts: that, as discussed at a condominium association meeting in early 2003, unit owners and board members were having "problems with leaking windows" in the units; that the contractor hired to repair the leaks, Himango Siding, believed the leaks were caused because of improper installation by the "original siders," so that water was entering and running down the walls and into the windows; that similar leaks were reported in other units between 2004 and 2006; that the contractors hired to repair those leaks similarly reported that the interface between the siding was done incorrectly and that the flashing was funneling water in problematic ways; that three out of the five units managed by Gordon Properties were leaking, and that they "have leaked for as long as we have managed them, which is all the way back to when the first tenants moved in"; that one of the previously repaired units was continuing to experience water leaking from windows, and that the fire alarm in unit 4C had been set off by "water coming through the alarm unit from 4D"; that the owner of

---

[15] We do not understand the Association to argue that the misrepresentations were the cause of damage to the condominium buildings.

one of the units had requested "a building inspector and contractor to take care of this problem"; that Sherman Rake, hired in 2005 to address leaks, had found that water had been trapped by the belly band—*i.e.*, where the panel siding transitions to lap siding; that Sherman Rake had raised "[c]oncerns that water could be coming from areas other than around the windows" and could result in "on-going water damage"; that additional leaks were discovered in 2006 or 2007; that, by that time, at least nine of the 17 units had experienced window-related issues; and that neighboring townhomes, which were likewise developed by Cypress Ventures and built by Brookfield, were having their siding and windows replaced because of problems with leaking.

Given those undisputed facts, the only conclusion that a reasonable jury could reach is that, by 2006 or 2007 *at the very latest*, the Association knew or should have known that there was a substantial possibility that there were pervasive problems with the way that the original siding had been installed, that those problems had continually caused significant water intrusion into more than half the condominium units over a six- or seven-year span, and that further investigation of the scope of the problem was warranted.[16] *See The Foster Group, Inc. v. City of Elgin, Oregon*, 264 Or App 424, 434-35, 332 P3d 354 (2014) (holding that a reasonable person in the plaintiff's position "would have made at least some minimal inquiry" into whether the city's boundary survey was accurate, where the plaintiff had believed his boundary was in a different location from the survey, had received conflicting information about the property borders, and knew there were general problems with survey accuracy in the area); *Doughton v. Morrow*, 255 Or App 422, 430, 298 P3d 578, *rev den*, 353 Or 787 (2013) (explaining that the plaintiffs had "a duty to make follow-up inquiries" into who owned their property after a neighbor informed them that they had mistakenly built a well on the neighbor's property).

---

[16] The Association submits that it was only aware of problems with the windows, which were not part of the common areas for which the Association would have been responsible. That argument is unpersuasive in light of the connections between the windows and the siding that were repeatedly pointed out to the Association by the contractors who were hired to repair the window leaks.

Furthermore, there is no dispute on this record that, had the Association diligently and promptly investigated during 2006 or 2007—by hiring a company like BEDIC much earlier than it did—it would have readily discovered the full scope of the problems with the building enclosure and the remaining useful life of the building, as well as the expenses necessary to address the problem, well before July 2008. *See T. R.*, 344 Or at 294 (explaining that the statute of limitations begins to run at the point in time when an investigation would have disclosed the necessary facts); *The Foster Group, Inc.*, 264 Or App at 435 (explaining that the "plaintiff's later investigation demonstrate[d]" that an earlier inquiry would have uncovered facts that made the plaintiff aware of a substantial possibility of the alleged injury). Thus, the only conclusion that a jury could reach on the summary judgment record is that a reasonable person in the Association's position would have investigated the pervasive water intrusion and siding problems and discovered the full extent of the problem and the necessary repair costs well before July 2008; that the Association was aware of defendants' respective roles in the development and the management of the Association by that point; and that the Association would have then known the alleged falsity of defendants' various representations about the physical condition of the condominium and the financial condition of the Association. Accordingly, the Association's misrepresentation claims, which were not filed until July 22, 2010, are barred by the two-year statute of limitations in ORS 12.110(1), and we affirm the trial court's judgment with regard to those claims.

### 3. *Breach of fiduciary duty*

The Association concedes that its claims for breach of fiduciary duty are governed by the two-year statute of limitations in ORS 12.110(1), but argues that there is a genuine issue of material fact as to whether it could have discovered its claims against defendants before July 22, 2008. We reject the Association's discovery argument for the reasons discussed with regard to the misrepresentation claims. The only conclusion a jury could reach on this record is that the Association should have discovered the physical condition of the condominium buildings and the financial condition

of the Association; knew of defendants' roles as fiduciaries; and should have discovered the substantial possibility of a breach of duty well before July 22, 2008.

### 4. *Violation of the Oregon Condominium Act and nondisclosure*

With respect to its claims for violation of the Oregon Condominium Act and for nondisclosure, the Association advances the same argument for a six-year statute of limitations that it made regarding its common-law misrepresentation claims—*i.e.*, that the claims are based upon two misrepresentations (one about the useful lives of the buildings as set forth in the reserve study, and another about the cost of living in the Association) that interfered with an interest in real property for purposes of ORS 12.080(3). We again reject those arguments and conclude that the claims, which are based on misrepresentations, are governed by the two-year statute of limitations in ORS 12.110(1). And, for the reasons discussed with regard to the misrepresentation claims, we conclude that the Association's claims for violation of the Condominium Act and for nondisclosure are barred by the statute of limitations.

### 5. *Nuisance*

As described above, a part of the nuisance claim—which alleged post-construction conduct (ignoring the signs of defects and causing the project to be maintained knowing that water intrusion and damage would result)—survived Brookfield's first motion for summary judgment based on the statute of repose. 266 Or App at 582-83. In its second motion, Brookfield obtained summary judgment on the remainder of the nuisance claim on the ground that it was barred by the six-year statute of limitations in ORS 12.080(3).

On appeal, the Association argues that the trial court erred in ruling that the nuisance claim was time-barred, because, as was the case with the construction-defect claims, a jury could draw competing inferences as to whether defendant knew or should have known of the existence of the nuisance claim before July 22, 2004—*i.e.*, six years before its complaint was filed. Defendants again respond that ORS 12.080(3) does not include a discovery

rule, and even if it does, the Association's nuisance claim accrued before July 22, 2004.

As discussed above, the Supreme Court's subsequent decision in *Rice*, 354 Or 721, held that a discovery rule applies to tort actions referenced in ORS 12.080. Thus, we hold that the Association's nuisance claim is subject to a discovery rule and did not accrue until the Association knew or should have known that an injury occurred. *See Sunset Presbyterian Church*, 355 Or at 290 ("Generally, for purposes of the statute of limitations, tort claims accrue when the plaintiff knows or should know that an injury has occurred."); *Smejkal v. Empire Lite-Rock, Inc.*, 274 Or 571, 574, 547 P2d 1363 (1971) ("Trespass and private nuisance are separate fields of tort liability relating to actionable interference with the possession of land." (Internal quotation marks and citation omitted.)).[17]

Furthermore, we conclude, for the reasons previously set forth regarding the Association's construction-defect claims, that genuine issues of material fact preclude summary judgment on the question whether the Association should have discovered its injury before July 22, 2004; accordingly, the trial court erred in granting summary judgment on the Association's nuisance claim.

C. *Brookfield's Cross-Assignments of Error*[18]

Last, we briefly address Brookfield's cross-assignments of error, in which it asserts that the trial court erred in denying its motion for summary judgment on whether (1) Brookfield played a role in property management, sale of units, and establishment of the Association's budget; (2) Eck acted for Brookfield while on the Association's board; and (3) whether Cypress Ventures was the partner and alter ego of Brookfield. *See Lucas v. Lake County*, 253 Or App 39, 56,

---

[17] Defendants do not develop any argument that nuisance claims, although in the field of torts, nonetheless "accrue" before the plaintiff knows that an injury has occurred.

[18] Although Brookfield filed a notice of cross-appeal, it does not seek to reverse or modify the judgment; for that reason, the issues that Brookfield raises are properly cast as cross-assignments of error, which is how Brookfield denominates them in its briefing. *See* ORAP 5.57(2). Accordingly, we address the cross-assignments as part of the Association's appeal, and we dismiss the cross-appeal as moot.

289 P3d 320 (2012) (explaining circumstances in which the denial of a motion for summary judgment is reviewable). We have reviewed the summary judgment record, and, as to the first two cross-assignments, suffice it to say that the record includes evidence—notably, a declaration from Lowell Morse in which he stated that Eck represented Brookfield on the Assocation's board—that raises genuine issues of material fact as to the role that Brookfield and Eck, its president, had with respect to the Association and its activities. We therefore reject those cross-assignments of error.

As for the "alter ego" argument, that issue was not clearly raised in Brookfield's second summary judgment motion, and Brookfield itself argues that the theory was not pleaded by the Association. Because Brookfield has not clearly laid out how it raised the alter ego argument below, or how it is relevant to the pleadings, we decline to address it.

### III.  CONCLUSION

For the foregoing reasons, we conclude that the trial court erred in dismissing the Association's construction-defect (negligence) and nuisance claims, because there are genuine issues of material fact as to (1) the date Cypress Ventures accepted the Riverview Condominium as "substantially complete" for purposes of the statute of repose in ORS 12.135, and (2) the date the Association reasonably should have discovered its injuries for purposes of the statute of limitations in ORS 12.080(3). We affirm the trial court's judgment as to the remainder of the Association's claims.

On appeal, reversed in part and remanded; on cross-appeal, dismissed as moot.